# NUGENT v. ARIZONA IMPROVEMENT COMPANY.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 119.   Argued and submitted January 10, 11, 1899. — Decided February 20, 1899.

Under the act of March 8, 1895, of the legislature of the Territory of Arizona, relating to convict labor and the leasing of the same, the board of control thereby created and given charge of all charitable, penal and reformatory institutions then existing, or which might thereafter be created in the Territory, could not dispense with the bond required by the statute to be given by the person or persons leasing the labor of the convicts, for the faithful performance of their contract; and no contract made by the board leasing the labor of the convicts could become binding upon the Territory, until a bond, such as the statute required, was executed by the lessee and approved by the board.

In this case as it appears that no such bond was executed, the plaintiff was not in a position to ask relief by mandamus.

THE case is stated in the opinion.

*Mr. Charles F. Ainsworth,* Attorney General of Arizona, and *Mr. L. E. Payson* for appellant, submitted on their brief.

*Mr. Eugene . Ives* for appellee.   *Mr. L. H. Chalmers* was on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

By an act of the legislative assembly of the Territory of Arizona, approved March 8, 1895, the governor and auditor of the Territory, together with one citizen to be appointed by the governor with the advice and consent of the council, were constituted a board of control and given charge of all charitable, penal and reformatory institutions then existing or which might thereafter be created in the Territory.

It was provided by the ninth section of the act that the

board of control, after qualifying and entering upon their duties, should have full control over the territorial insane asylum, the territorial reform school and territorial prison, together with all property, buildings and lands belonging thereto or that should thereafter be acquired. That section further provided : " Sixty days after the passage of this act they shall have the power and authority to enter into an agreement or agreements with a responsible person or persons, to lease on shares or for cash the property, buildings and lands or any part thereof now belonging to the Territory, wherever said buildings and lands may be located, or that may hereafter be acquired for the purpose of furnishing employment for the inmates of the said territorial prison and the said territorial reform school. The said board shall have the authority to contract with a responsible person or persons to furnish the labor of the inmates now within the said reform school or said prison, or that may hereafter be confined therein, or any number of them, for the best interests of the Territory ; provided, however, that at no time shall the labor of the inmates of the said territorial prison or territorial reform school be leased to any person or persons when the labor of the inmates of said institution is required upon any buildings or properties of the aforesaid institutions, and no lease or contract shall be made that will obligate the Territory to furnish tools, machinery or money, or make other expenditure other than the labor of the inmates, properly clothed and fed, and the proper guards for same, together with the use of the property, buildings and lands heretofore mentioned ; provided, that no contract or lease shall be made to extend for a term of more than ten years from the time of making said lease or contract. And the said board may contract to allow such labor to be performed at any place either inside or outside the prison walls or the confines of the reform school, but if a contract be made to allow labor to be performed outside of the prison walls or confines of the reform school, it must be done under proper restrictions, having regard for the safety of the prisoners or inmates. A good and sufficient bond must be given by the person or persons leasing the labor of inmates of the

aforesaid institutions for the faithful performance of such contract; said bond to be approved by the board of control." Laws of Arizona, 1895, pp. 20, 22.

This statute being in force, a written agreement was made December 2, 1896, between "the Territory of Arizona, by L. C. Hughes, Governor, C. P. Leitch, auditor, and M. H. McCord, constituting the board of control of the Territory of Arizona," of the first part, and the State of Arizona Improvement Company, of the second part. That agreement contained among other provisions the following: ·

"The party of the second part having submitted its good and sufficient bond for the faithful performance of this contract, which said bond has been approved by the said board of control, and each of its members, and is herewith delivered and accepted, the said party of the first part, for and in consideration of the covenants and agreements hereinafter mentioned, reserved and contained on their part, and on behalf of the said party of the second part to be done and kept and performed, hath granted, bargained, demised, leased and to farm letten to said party of the second part, its successors and assigns, all that certain real estate; . . . also all the labor of the male convicts now in the territorial penitentiary, or who may hereafter be confined therein, to have and to hold the labor of said penitentiary convicts unto said party of the second part, and to its assigns, for the term of ten years from the date of these presents; and the lands and premises above described for and during and until the end of the full term of ten years to be fully completed and ended, and it is further stipulated and agreed by and between the parties hereto that in the event of the removal of the territorial prison from Yuma County, Territory of Arizona, to any other portion of the Territory, such removal will in no way, manner, shape or form interfere with the conditions, stipulations and covenants of this contract and lease.

"It is further understood, stipulated and agreed by and between the parties hereto, that the party of the second part is to have the exclusive control of the labor of the convicts in the territorial prison from 8 o'clock A.M. to 5 o'clock P.M.,

during the said term of ten years from the date of these presents, Sundays and legal holidays excepted.

"It is further agreed by and between the parties hereto that the party of the first part, or its agent or agents, will furnish the said convict labor to the party of the second part, at the place or places designated by the said party of the second part, or its agents, in Yuma County, Arizona Territory, properly guarded, clothed, fed and ready to commence work at the hours and terms heretofore mentioned, and the party of the first part shall properly guard said convicts during the hours of labor. The party of the second part is to furnish all the tools and machinery necessary for the use of the convicts while at work under the conditions of this contract and lease, but the said party of the first part shall not be compelled to take outside of the prison, under guard, parties of less than five convicts. . . .

"The superintendent of the prison or agent of the Territory having the convicts in charge shall be required to furnish the convicts in such numbers as may be required from time to time up to the amount of all the able-bodied male convicts; to deliver them at such points or places in Yuma County, as may be demanded of him, by the party of the second part, its agent or agents. The party of the second part further agrees to keep a current and accurate account of the number of days worked by convicts, and on the first Monday of each calendar month to make a statement of the total number of days done the previous month by all the convicts employed by the said party of the second part, and shall furnish a copy of the said statement to the Superintendent of the territorial prison, properly verified by an agent of the company.

"The said party of the second part agrees to compensate the party of the first part for such convict labor as follows, to wit: The value of each convict's labor shall be placed at 70 cents per day, and as soon as the party of the first part has furnished convict labor at the rate of 70 cents per day; aggregating the sum of sixteen hundred dollars, the party of the second part shall issue its perpetual water-right deed for eighty

acres of land, of the water in its canal, when such canal is completed. . . . .

"It is further covenanted and agreed, by and between the parties hereto, that after the water rights hereinbefore provided for are earned by said party of the first part, then as soon as the labor of convicts at the rate of 70 cents per day, for each day's labor, amounts to sixteen hundred dollars, the party of the second part shall issue water-right certificates for one eighty-acre water right. . . .

"It is further stipulated by and between the parties hereto in consideration of the covenants herein contained, that the said party of the second part is to use such of said convicts' labor —— this contract and lease as it may from time to time require, and such party of the second part need not commence to use any of said labor sooner than five months from the date hereof.

"It is further stipulated and agreed by and between the parties hereto, in consideration of the covenants herein contained, to be performed by each of the parties hereto, and in consideration of the convict labor herein mentioned, that the lease of the lands herein described shall commence on and from the day when the water shall be conducted in the canal. of the party of the second part to lands, convenient for the said water to be conducted upon the said lands hereinbefore described, and shall terminate ten years thereafter; and that the party of the second part shall pay to the party of the first part, as rent therefor, an annual sum, to be hereafter determined upon in cash, or at the option of the party of the second part, one half of the net products of the said lands; provided, however, that the said lease shall commence to run within four years from date.

"It is further agreed, covenanted and declared that these presents are made, executed and delivered for the best interest of the Territory of Arizona, and for the purpose of furnishing employment for the inmates of the said territorial prison — the labor of said inmates being not required upon any buildings or properties of any institution of said Territory."

On the 22d day of April, 1896, it was agreed in writing

between the parties as follows: "The time for commencing work under this contract is hereby extended to the 10th day of June, 1896, and it is fully understood and agreed by the parties hereto that this extension is in no way to affect the legal status of said contract. It is understood and agreed that the rights of the parties thereto are to remain in *statu quo*, and the extension herein made is not intended to ratify, alter or impair said contract or to give it any validity whatsoever that it does not before the signing of this instrument possess."

Later, a supplemental agreement in writing was made between the same parties, but in the view which the court takes of this case it need not be set out in this opinion.

On the 26th day of May, 1896, the State of Arizona Improvement Company filed its complaint in the district court of the third judicial district of the Territory in and for the county of Yuma, in which reference was made to the above agreements with the board of control, and in which it was alleged that it was a corporation organized under the laws of the Territory; that M. J. Nugent, a resident of Yuma County, was the superintendent of the territorial prison at Yuma, and as such had full control of the prisoners confined in that prison, subject only to the direction of the board of control of the Territory; that on the 25th day of May, 1896, the plaintiff company demanded in writing of said Nugent, superintendent aforesaid, that in pursuance of the contract between it and said board of control he furnish to plaintiff on the 2d day of June, 1896, at 8 A.M., ten able-bodied male convicts out of the territorial prison at Yuma, properly guarded, on the outside of the gate of the territorial prison; that on the next day Nugent served a written notice on the plaintiff, whereby he peremptorily declined to furnish the convict labor at such time and place or at any time and place; and that the plaintiff had not a plain, speedy or adequate remedy in the ordinary course of law.

The complaint was supported by the affidavit of the president of the plaintiff company.

The relief asked was that a writ of mandamus issue, directed

to Nugent, superintendent of the territorial prison, directing
and commanding him to furnish to the plaintiff ten able-
bodied male convicts out of the territorial prison at Yuma,
on the 2d day of June, 1896, on the outside of the prison gate
at Yuma, properly guarded; and that plaintiff have such
other and further relief as to the court seemed meet and just.

An alternative writ of mandamus was issued, and Nugent,
as superintendent of the prison, excepted to the sufficiency
of the complaint, and demurred thereto upon these grounds:
1. That the complaint did not state facts sufficient to author-
ize a writ of mandamus. 2. That the plaintiff sought to com-
pel the performance of an act by the respondent as super-
intendent of the territorial prison which the law did not
specially enjoin upon him as a duty resulting from his office.
3. That the petition sought to compel the performance of
a contract made by others and not by respondent. 4. That
the alleged contract was void, because authorized only by a
pretended law which was void.

Nugent also filed an answer, alleging, among other things,
that there was a want of proper parties defendant; that the
Territory had no power to hire out the convicts confined in
the territorial prison who had not been sentenced to pun-
ishment with hard labor, nor to authorize the convicts to be
taken out and away from the territorial prison where pun-
ishment and sentence was by confinement in such prison;
that the board of control had no power to make the contract
sought to be enforced; that the contract was itself without
consideration and in violation of the act of March 8, 1895, in
that it was for a period of over ten years; that the contract
took the entire convict labor for the period just named in
violation of the provisions of the act providing that said labor
should not be leased out when it was needed to work on the
buildings and premises of the territory; and that the contract
was against public policy in authorizing all the prisoners to be
taken from the prison and to remain away from it in many
cases for the entire period of their sentence.

The answer also averred "that as the duly appointed, quali-
fied and acting superintendent of the territorial prison at

Yuma, Arizona, previous to the service of the alternative writ herein, this defendant was advised and informed by the Honorable B. J. Franklin, as Governor of the Territory of Arizona, that the said pretended contract mentioned in the application herein was and is of no valid force and effect, and further advised and informed in substance and to the effect that said contract was not of any legal force or binding effect upon said Territory or said board of control, and, among other things concerning the same, the said Honorable B. J. Franklin, acting as such Governor, authorized and directed this defendant in substance and to the effect that in the event that the said State of Arizona Improvement Company should, by its officers or agents, make a demand upon this defendant to do or perform anything under the provisions of said contract, and especially if such demand should be made for the delivery of any prisoners confined in or inmates of said penitentiary to the said company, its officers or agents, at the gate of said prison or elsewhere, that this defendant, acting as such superintendent, should politely, but firmly, refuse such request or any request made or to be made under the provisions of said pretended contract; that acting under the advice and information given by the Honorable B. J. Franklin, Governor of this Territory, and of the direction of the head of the executive department of this Territory, this defendant alleges that he made the refusal complained of in the application herein and not otherwise. . . . Respondent further avers and gives the court to know that the State of Arizona Improvement Company has not, before the institution of these proceedings, executed and filed a good and sufficient bond enforceable in a court of law in any of the courts of this Territory for the faithful performance of said contract, as required by said pretended board of control act."

The case was heard in the district court on the complaint and the demurrer and answer. The demurrer of the defendant was overruled, and the contracts set forth in the complaint were the only evidence adduced at the trial. The defendant having declined to amend the pleadings or to offer further evidence, and having elected to stand upon the pleadings, the

court found for the plaintiff, and ordered a peremptory writ of mandamus to issue.

A new trial having been refused, the case was carried to the Supreme Court of the Territory, where the judgment of the district court was affirmed.

We are of opinion that the Supreme Court of the Territory erred in affirming the judgment of the district court awarding a writ of mandamus against the defendant Nugent.

The statute under the authority of which the board of control made the contracts referred to in the complaint expressly required a good and sufficient bond to be given by the person or persons leasing the labor of inmates of the territorial prison for the faithful performance of such contract, which bond was to be approved by the board. The complaint asking for a mandamus against the superintendent of the prison did not distinctly allege the execution of such bond. But the answer of Nugent alleged that the defendant in error had not, prior to the institution of these proceedings, executed and filed a good and sufficient bond enforceable in a court of law in any court of the Territory for the faithful performance of its contract, as required by the act of March 8, 1895. That act it is true did not in terms require the execution and delivery of a bond prior to or contemporaneously with the making of a contract with the board of control. But it is clear that the board could not dispense with the bond, and that no contract made by them leasing the labor of the convicts could become binding upon the Territory until a bond such as the statute requires was executed by the lessee and approved by the board. The recital in the agreement of December 2, 1896, that the lessee had submitted, and that the Board had approved, a good and sufficient bond for the faithful performance of that agreement, may have been made in the expectation that such a bond would be executed before the agreement became effective as between the parties. But as the case was heard upon the pleadings, without any evidence except the written agreements between the board of control and the Improvement Company, the mere recital referred to cannot be taken as sufficient to disprove the averment in the answer as to the non-

execution of the required bond. If the plaintiff was entitled to the relief asked by a proceeding against the superintendent, without bringing the members of the board of control before the court, it should have shown by allegation and proof that the required bond had been executed. If no bond was executed as required by the statute, the plaintiff was not in a position to ask relief by mandamus. The superintendent of the prison may not have been charged by law with knowledge of the provisions of the statute, but he was aware of its provisions, and was bound not to allow the convicts to go beyond his control under an agreement that did not conform to the statute. An agreement unaccompanied by the required bond would not justify him in surrendering custody and control of the convicts or any of them. As it must be taken upon the present record that the Improvement Company never executed the bond required by the statute, the district court erred in giving any relief.

Under the circumstances, it may not be inappropriate to say that in the printed brief of the Attorney General of Arizona it is distinctly stated that no bond had ever been executed, and that statement is not disputed in the printed brief subsequently filed for appellee, nor was it disputed by counsel for appellee in oral argument.

Without expressing any opinion in reference to other questions discussed by counsel, some of which are important, the judgment of the Supreme Court of the Territory is for the reasons stated

*Reversed, with directions to remand the case to the district court for such further proceedings as may be consistent with this opinion and with law, and it is so ordered.*