# THOMPSON *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

No. 124. Argued December 15, 16, 1891. — Decided January 11, 1892.

The tax imposed upon distilled spirits by Rev. Stat. § 3251, as amended by the act of March 3, 1875, 18 Stat. 339, c. 127, attaches as soon as the spirits are produced, and cannot be evaded except upon satisfactory proof, under section 3221, of destruction by fire or other casualty.

When distilled spirits upon which a tax has been paid are exported, they are to be regauged at the port of exportation alongside of, or on, the vessel, and the drawback allowed is to be determined by this gauge, although a previous gauge may have shown a greater amount.

The execution of an exportation bond, under the internal revenue laws, is only evidence of an intention to export; and it is open to doubt whether the actual exportation can be considered as beginning until the merchandise leaves the port of exportation for the foreign country.

THIS was an action on a bond in the penal sum of $41,000, given by the defendant Thompson and his sureties for the exportation of certain distilled spirits. The bond was dated October 23, 1885, and after reciting a prior bond given on the 8th of April, 1885, by the same parties, conditioned for the delivery of certain distilled spirits therein named on board ship at the port of Newport News, Virginia, for exportation to Melbourne, Australia, and for the performance of certain other things therein named, and after further reciting that it was found desirable to deliver a portion of such spirits on board ship at the port of New York for exportation to Bre-

men, namely nine hundred and twenty-nine packages of Bourbon whiskey, the marks and numbers of which were given, by certain railways to New York, from distillery warehouse No. 63 in the 8th district of the State of Kentucky, was conditioned "that if the whole of the aforesaid merchandise shall be safely delivered to the Collector of Customs at the said port of New York within fifteen days from date hereof, and if the said John B. Thompson, principal, shall export or cause to be exported the said merchandise in accordance with the internal revenue laws and the regulations of the Treasury Department made in pursuance thereof immediately on the arrival of said merchandise at said port of New York, and shall within fifteen days thereafter produce to the collector of internal revenue for the 8th district of the State of Kentucky the certificate of the Collector of Customs of the said port of New York showing that the said merchandise has been duly exported, and shall also produce within nine months thereafter his certificate that the said merchandise has been duly landed at the port of Bremen or at some other port without the jurisdiction of the United States, or shall produce satisfactory proof of the loss thereof at sea without fault or neglect of the owner or shipper thereof as required by law and regulations, then this obligation to be void," etc.

The breach of the condition of the bond laid in the petition was that the defendants failed to deliver to the Collector of Customs at New York, within fifteen days, or within any other time, 1065 gallons of the said spirits, as appeared from a regauge made on October 27, 1885, the object of the suit being to recover the tax of ninety cents a gallon on the said deficiency, being $958.50, with interest at the rate of one per cent per month, and a penalty of five per cent.

The prior bond alluded to in the bond in suit was executed by the same parties April 8, 1885, and recited that Thompson, the principal, had made request to the collector of the 8th district of the State of Kentucky for the transportation of 1085 packages of Bourbon whiskey to the port of Newport News for exportation, and contained similar conditions to the bond in suit, except that it provided for exportation by the way of Newport News, within seven months from the date of such

bond, to Melbourne, Australia. It appeared that the 929 packages covered by the bond in suit were part of the 1085 packages covered by the prior bond. It also appeared that the deficiency of 1065 gallons in the spirits represented the loss thereon by evaporation and leakage while the same were in warehouse and previous to transportation for export.

The answer, among other things, denied that the said 1065 gallons were removed from the bonded warehouse, or that the collector ever demanded the tax of the defendants; and further, that the bond in suit was given to meet the requirements of certain rules and regulations of the Treasury Department, and that at the time the prior bond was given, April 8, the spirits on which it was sought to collect the tax were in the packages covered by such bond; that by the acceptance of said bond of April 8 the spirits referred to therein were free from any obligation for taxes, and were in due process of exportation on and after such date, to Bremen, Germany, where they have arrived; and that the tax sued for was a deficiency tax upon the spirits covered by the bond of October 23, 1885, which were actually exported, and to allow the recovery of such tax would be to enforce an export duty on the spirits exported as aforesaid, in violation of the prohibition of the Constitution of the United States in that particular. The answer contained further averments not necessary to be noticed here. The government demurred to each paragraph of the answer, and the demurrer was sustained as to all such paragraphs except the first, upon which there was a trial, resulting in a judgment and verdict for the full amount claimed, namely, $1023.61, with interest, etc. A writ of error was sued out from the Circuit Court, by which the judgment of the District Court was affirmed. A writ of error was thereupon sued out from this court.

*Mr. Philip B. Thompson, Jr.,* for appellants.

*Mr. Assistant Attorney General Maury* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The sole question presented for our consideration in this case is whether defendants are liable for the tax upon 1056 gallons of spirits lost by evaporation between the giving of the first bond in April, 1885, and the second bond on October 23d of the same year. This depends upon the construction of the excise laws of Congress regulating the taxing and exportation of distilled spirits manufactured in this country. By Revised Statutes, section 3248, distilled spirits are defined to be " that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses or sugar, etc. . . . *and the tax shall attach to this substance as soon as it is in existence as such.*" By section 3251, as amended by the act of March 3, 1875, 18 Stat. 339, c. 127 : " There shall be levied and collected on all distilled spirits . . . a tax of ninety cents on each proof gallon, or wine gallon when below proof, to be paid by the distiller, owner or person having possession thereof, before removal from the distillery bonded warehouse." By section 3293, as amended by the act of May 28, 1880, 21 Stat. 145, provision is made for the entry and deposit of all spirits removed to the distillery warehouse, requiring that " the said distiller or owner shall *at the time of making said entry* give his bond . . . conditioned that the principal named in said bond shall pay the tax on the spirits as specified in the entry, or cause the same to be paid, before removal from said distillery warehouse, and within three years from the date of said entry. . . . If it shall appear at any time that there has been a loss of distilled spirits from any cask or other package hereafter deposited in a distillery warehouse, other than the loss provided for in section 3221 of the Revised Statutes of the United States" [which authorized an abatement of taxes upon satisfactory proof of actual destruction by accidental fire or other casualty while in any distillery warehouse], " which, in the opinion of the Commissioner of Internal Revenue, is excessive, he may instruct the collector of the district in which the loss has occurred to require the withdrawal from warehouse, of such distilled spirits, and to collect the tax accrued upon the original quantity of distilled

spirits entered into the warehouse in such cask or package, notwithstanding that the time specified in any bond given for the withdrawal of the spirits entered into warehouse in such cask or package has not expired."

The evident intention of Congress, to be gathered from these provisions is, that the tax shall attach as soon as the spirits are produced, and that such tax shall not be evaded except upon satisfactory proof, under section 3221, of destruction by fire or other casualty.

The spirits covered by this bond were put in defendant Thompson's own warehouse, and were originally intended to be entered for exportation to Melbourne, Australia, and in pursuance of such intention, the bond of April 8, 1885, was given. At this time the spirits were regauged in obedience to section 17 of the act of May 28, 1880, 21 Stat. 149, which provides that " whenever the owner of any distilled spirits shall desire to withdraw the same from the distillery warehouse, or from a special bonded warehouse, he may file with the collector a notice giving a description of the packages to be withdrawn, and request that the distilled. spirits be regauged. . . . If upon such regauging it shall appear that there has been a loss of distilled spirits from any cask or package, without the fault or negligence of the distiller or owner thereof, taxes shall be collected only on the quantity of distilled spirits contained in such cask or package at the time of the withdrawal thereof from the distillery warehouse, or special bonded warehouse." Under this provision of the law an allowance for outage, or loss by evaporation while in warehouse, was then duly made; but instead of being exported to Melbourne the spirits were kept in the warehouse until the period of seven months named in the bond of April 8, 1885, as the time limited for exporting, had nearly expired, and until it was too late to export by the way of Newport News without a breach of the conditions of the bond. Thereupon the distiller determined to export the bulk of these packages through the port of New York to Bremen, and accordingly they were again entered for exportation, and the second exportation bond of October 23 was executed, under which the exportation was made.

There seems to be no provision in this act for a second regauging, or allowance for outage, in case the spirits are not actually withdrawn from the warehouse after the first regauging, provided for in section 17. Nor does there seem to have been any other notice to the collector, or a request for regauging, as contemplated in that section. It would seem to be just and equitable, if from any cause, not arising from his own fault, the owner should fail to export the liquors under the first regauging, he should be entitled, at any time within the three years provided by the same act, to make another request for regauging, and be entitled to an allowance for any deficiency for evaporation occurring after the prior regauging; but the law seems to contemplate but one notice of withdrawal, and the regulation of the commissioner, circular No. 296, requires that where spirits covered by an exportation bond are actually removed from the distillery warehouse for exportation, the gauger shall carefully reinspect each package, and if an additional outage is found to exist in any of the packages so inspected, which reduces the number of taxable gallons in the packages, as last previously reported, he shall report the same to the collector, and the collector shall at once require payment of the tax on the taxable gallons represented by such reduction, even though it is alleged that the loss is occasioned by a casualty. This regulation was within the scope of the commissioner's authority and was in force when the second bond was given.

By Revised Statutes, section 3329, provision is made for the exportation of distilled spirits " upon which all taxes have been paid," and minute regulations prescribed for the method of such exportation, one of which is that " the casks or packages shall be inspected and gauged *alongside of or on the vessel* by the gauger designated by said collector, under such rules and regulations as the Secretary of the Treasury may prescribe," and " the drawback allowed shall include the taxes levied and paid upon the distilled spirits exported . . . *as per last gauge of said spirits prior to exportation,*" etc. By section 3330, provision is made for the withdrawal of distilled spirits from bonded warehouses, for exportation in the original

casks, without the payment of taxes, under regulations to be prescribed by the Commissioner of Internal Revenue, with a proviso "that the bonds required to be given for the exportation of distilled spirits shall be cancelled upon the presentation of satisfactory proof and certificates that said distilled spirits have been landed at the port of destination named in the bill of lading, or upon satisfactory proof that after shipment the same were lost at sea without fault or neglect of the owner or shipper thereof."

Taking these provisions together, it is evident that when spirits upon which the tax has been paid, are exported, they are regauged at the port of exportation *alongside of or on the vessel*, and the drawback allowed is determined by *the amount of this gauge*, notwithstanding a previous gauge may have shown a greater amount. The result is that the owner receives no drawback upon any deficiency occurring prior to the last regauge. While section 3330, regulating the export of spirits upon which the tax has not been paid, does not contain similar provisions, it is very improbable that Congress should have intended to exempt the deficiency in the case of exportations without payment of tax, and tax it in case of drawbacks upon exportations after payment of tax.

Defendant's position that the spirits in this case were in process of exportation after the execution of the bond of April 8 is untenable. Exportation is defined to be the act of carrying or sending merchandise abroad, and it cannot be considered as beginning until the spirits are removed from the warehouse for that purpose. The execution of the bond is evidence of nothing more than an intention to export. As well could the taking out of a passport, or the engagement of passage upon a transatlantic steamer, be regarded as the commencement of a journey to foreign parts Indeed, it may admit of doubt whether exportation can be considered as beginning until the merchandise leaves the port of export for a foreign country. That the execution of the bond was not the commencement of exportation is also evident in this case from the fact that the exportation provided for in the first bond, by the way of Newport News, was wholly abandoned, and a

second bond was executed in October covering an export to Bremen through the port of New York. As the exportation which was actually made, was not contemplated at all when the first bond was given, how is it possible to say that this was the beginning of such exportation? If the giving of the bond can in any sense be said to be the commencement of the exportation, it must apply to the bond which was given to cover the export which was actually made, and as the evaporation occurred before that time, we do not think that the constitutional inhibition against the taxation of articles exported from a State is drawn in question.

As the law contemplated but one withdrawal entry for exportation, and made allowance only for a deficiency upon such entry, it was within the power of the collector to assess a tax upon the deficiency that accrued between the dates of the two bonds, since that deficiency represented spirits that could not be exported and were not within the exemption of any statute.

The act of December 20, 1879, 21 Stat. 59, providing for an allowance to be made for leakage or loss by any unavoidable accident "occurring during transportation from a distillery warehouse to the port of export," cuts no figure in this case, since the evaporation occurred before the spirits left the distillery warehouse, and before the execution of the last bond.

The case is doubtless one of considerable hardship to the defendants, but in view of the exceeding stringency of the laws with respect to the taxation of distilled spirits, we do not see our way to relieve them from the payment of this tax, and the judgment of the court below is therefore

*Affirmed.*

Mr. Justice Field dissented.