GREENBRIER DISTILLERY CO. v. JOHNSON, Internal Revenue Collector, et al.

(Circuit Court of Appeals, Sixth Circuit. July 5, 1898.)

No. 516.

1. INTERNAL REVENUE—REMISSION OF WHISKY TAX.

Under the internal revenue laws, the tax on spirits attaches as soon as they come into existence, and must be paid by the manufacturer, even in case of their destruction, unless the circumstances on which he relies for exemption come within the particular description in some one of the remedial statutes.

2. SAME—SPIRITS DESTROYED IN TRANSIT.

Under section 56 of the act of August 28, 1894, providing for the establishment of general bonded warehouses, the provisions for allowance for loss by fire or other unavoidable accident do not extend to the case of such a loss while spirits are in transit from a distillery warehouse to a general bonded warehouse.

In Error to the Circuit Court of the United States for the District of Kentucky.

This was an action by the Greenbrier Distillery Company against Ben Johnson, collector of internal revenue for the Fifth district of Kentucky, and the Fidelity & Deposit Company of Maryland, the surety on Johnson's official bond, to recover the amount of internal

revenue taxes exacted upon certain spirits destroyed in a railroad collision. In the circuit court a demurrer to the amended petition was sustained, and judgment entered for defendant, to review which the plaintiff sued out this writ of error.

Helm & Bruce, for plaintiff in error.
W. M. Smith, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

TAFT, Circuit Judge. The plaintiff, the Greenbrier Distilling Company, is a distiller of whisky in Nelson county, Ky. Under an act of congress approved August 28, 1894, providing for general bonded warehouses, it transported from its distillery warehouse in that county to the general bonded warehouse in California 65 barrels of whisky. In the course of the transportation, the whisky was totally destroyed by an accidental railway collision in the state of Alabama. Ben Johnson, the collector of internal revenue for the Fifth district of Kentucky, demanded and collected from the plaintiff $3,259.08 as the internal revenue tax upon these 65 barrels of whisky that were destroyed. The payment was made under protest, because of a threat by the collector to seize plaintiff's distillery. The plaintiff appealed from the collector to the commissioner of internal revenue, who held that there was no provision of law for the refunding of tax legally collected on spirits in transportation from a distillery warehouse to a general bonded warehouse.

Section 51 of the act to reduce taxation, to provide revenue for the government, and for other purposes, passed August 27, 1894 (28 Stat. 564), authorizes the commissioner of internal revenue to establish one or more warehouses, not exceeding ten in any district, to be known and designated as "general bonded warehouses," and to be used exclusively for the storage of spirits distilled from material other than fruit.

Section 52 provides that any distilled spirits made from materials other than fruit, and lawfully deposited in a distillery warehouse, may, upon application of the distiller thereof, be removed from such distillery warehouse to any general bonded warehouse established under the provisions of the preceding section; and the removal of said spirits to said general bonded warehouse shall be under such regulations, and after making such entries, and executing and filing with the collector of the district in which the spirits were manufactured such bonds and bills of lading, and the giving of such other additional security, as may be prescribed by the commissioner of internal revenue and approved by the secretary of the treasury.

Section 54 provides that any spirits removed in bond as aforesaid may, upon their arrival at a general bonded warehouse, be deposited therein upon making such entries, filing such bonds and other securities, and under such regulations as shall be prescribed by the commissioner of internal revenue, with the approval of the secretary of the treasury. It further provides that one of the conditions of the

warehousing bond shall be that the principal named in the bond shall pay the tax on the spirits.

Section 55 provides that any spirits may be withdrawn once, and no more, from one general bonded warehouse for transportation to another general bonded warehouse, and, when intended to be so withdrawn, shall have affixed thereto another general bonded warehouse stamp indicative of such intention; and the withdrawal of such spirits, and their transfer to and entry into such general bonded warehouse, shall be under such regulations and upon the filing of such notices, entries, etc., as the commissioner of internal revenue, with the approval of the secretary of the treasury, may from time to time prescribe.

Section 56, which is the section whose construction is here in controversy, provides as follows:

"That the provisions of existing law in regard to the withdrawal of distilled spirits from warehouses upon payment of tax or for exportation, or for transfer to a manufacturing warehouse, and as to the gauging, marking, branding and stamping of the spirits upon such withdrawals, and in regard to withdrawals for the use of the United States or scientific institutions or colleges of learning, including the provisions for allowance for loss by accidental fire or other unavoidable accident, are hereby extended and made applicable to spirits deposited in general bonded warehouses under this act."

The provisions for allowance for loss by accidental fire or other unavoidable accident are:

First. Section 8 of the act of May 28, 1880 (1 Supp. Rev. St. p. 287), releases the distiller from the payment of tax upon spirits destroyed by accident while in the process of manufacture.

Second. Whenever the manufacture of spirits has been completed, it is drawn off into cisterns, where it is allowed to stand not exceeding three days before being carried into the distillery; but if it is destroyed before being drawn off and carried into the distillery warehouse, the tax is remitted by the act of March 1, 1879, amending section 3221, Rev. St. (1 Supp. Rev. St. p. 235).

Third. When the whisky is destroyed in the distillery warehouse, section 3309 provides for the remission of the tax.

Fourth. If the spirits are removed from a distillery warehouse to a manufacturer's warehouse, and are lost in the course of such removal, section 15 of the act of May 28, 1880, provides for the remission of the tax as follows:

"That where spirits are withdrawn from distillery warehouses for transfer to manufacturing warehouses under the provisions of this act, it shall be lawful under such rules and regulations and limitations as shall be prescribed by the commissioner of internal revenue, with the approval of the secretary of the treasury, for an allowance to be made for leakage or loss by any unavoidable accident and without any fraud or negligence of the distiller, owner, exporter, carrier or their agents or employés, occurring during transportation from a distillery warehouse to a manufacturing warehouse."

Fifth. A similar provision is made where the spirits are removed from a distillery warehouse for the purpose of export by the act of December 20, 1879, amending section 3330 of the Revised Statutes, as follows:

"That where spirits are withdrawn from distillery warehouses for exportation according to law, it shall be lawful, under such rules and regulations and limitations as shall be prescribed by the commissioner of internal revenue. with the approval of the secretary of the treasury, for an allowance to be made for leakage or loss by any unavoidable accident, and without any fraud or negligence of the distiller, owner, exporter, carrier or their agents or employés, occurring during transportation from a distillery warehouse to the port of export."

It is pressed upon the court that these various equitable provisions for relieving the distiller from the payment of tax upon whisky destroyed, whether it be in process of manufacture or in the cistern, in the distillery warehouse or in transportation to the manufacturing warehouse, or for export, require the court to construe section 54 of the act of August 28, 1894, liberally, so as to grant the same relief for whisky which is destroyed while in transit to a general bonded warehouse from a distillery warehouse. It is conceded that the tax attaches to the spirits as soon as they come into existence (Rev. St. § 3248); and it must be further conceded that the tax is to be paid by the manufacturer unless he can put his finger upon some clause which relieves him from its payment. The particularity with which congress specifies the circumstances under which the tax can be remitted is itself significant of the legislative intention that, unless the claim of exemption from the payment of the tax comes within the particular description in some one of the remedial statutes, it shall not be allowed. Congress might easily have adopted a general law authorizing a remission of the tax entitling the distiller to relief in respect to whisky destroyed before the tax is paid, and while it remains in the custody of the officers of the government, but it has not done so. It has specified each case, and, unless the plaintiff's case comes within one of them, he is without remedy.

Section 56 applies to spirits after they have been in general bonded warehouses under the act. It applies to their withdrawal from such warehouses upon payment of tax or for exportation or for transfer to the manufacturing warehouse or for use of the United States or scientific institutions or colleges of learning. It refers to the gauging, marking, branding, and stamping of the spirits upon such withdrawal. Sections 52, 53, and 54 contain the provisions as to the removal from the distillery warehouse to the general bonded warehouse. Sections 55 and 56 refer to the conditions under which spirits deposited in the general warehouses may be either kept there or may be removed. It is clear, therefore, that the provisions for allowance for loss by accidental fire or other unavoidable accident refer to such spirits after they have been deposited in the general bonded warehouse, and not to spirits in course of transportation to it. There may be the same equitable ground for the remission of tax on whisky which is being removed from the distillery warehouse to the general bonded warehouse as there is for its remission when in transit from the distillery warehouse to the manufacturing warehouse or for exportation. But it is a complete answer to this suggestion to say that congress has not provided a remission in such a case. By no natural construction of the words used in section 56 can they be extended to cover a case of spirits before they have reached the general

bonded warehouse.   This was the view which was taken by the court below.   The issue was made by demurrer to the amended petition, the demurrer was sustained, and a judgment entered for the defend-ant.   The judgment of the circuit court is affirmed.