**JOSEPH E. SEAGRAM & SONS, Inc., v. UNITED STATES.**

No. 44782.

Court of Claims.

Feb. 3, 1941.

Alfred D. Van Buren, of New York City, (Davies, Richberg, Beebe, Busick & Richardson, of Washington, D. C., on the brief), for plaintiff.

S. E. Blackham, of Washington, D. C., and Samuel O. Clark, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and GREEN, Judges.

WHITAKER, Judge.

Plaintiff sues to recover the tax assessed on 726.6 proof gallons of gin which were lost as a result of the overflowing of one of the cisterns or tanks in the cistern room of its distillery. The tank overflowed as a result of the failure of the plaintiff's employee to change the valve on the pipes leading from the gin house to the cistern room so as to change the flow of spirits from tank Number 15 into tank Number 14.

Prior to the transfer of the gin from the gin house to the cistern room the manufacture of gin had been fully completed, except that the proof had to be reduced by the addition of water; but the distillation of the distilled spirits used in the manufacture of the gin had been fully completed prior to the time that the gin was pumped from the gin house into the cistern room. Under these facts, is the plaintiff liable for the tax on distilled spirits?

Section 1150 (a) (1) of Title 26 of the United States Code, 1934 Edition, in effect at the time of this occurrence, levies a tax "on all distilled spirits * * * produced in or imported into the United States * * * to be paid by the distiller or importer when withdrawn from bond."

Subsection (b) provides for the time of payment. It reads: "The tax upon any

distilled spirits, removed from the place where they were distilled and not deposited in bonded warehouse as required by law, shall, at any time within the period of limitation provided in section 3312, when knowledge of such fact is obtained by the Commissioner, be assessed by him upon the distiller of the same, and returned to the collector, who shall immediately demand payment of such tax, and, upon the neglect or refusal of payment by the distiller, shall proceed to collect the same by distraint. * * *"

Subsection (c) relates to the time the tax attaches. It reads: "The tax shall attach to distilled spirits, spirits, alcohol or alcoholic spirit, within the meaning of subsection (b) of section 2809 as soon as this substance is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process."

Section 2809 (b) defines "distilled spirits." It defines them as follows: "Distilled spirits, spirits, alcohol, and alcoholic spirits, within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced· by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance."

When the 726.6 proof gallons of this liquid were spilled it had been manufactured into gin except that the alcoholic content had not been reduced to the proper amount. This reduction was accomplished by the addition of water. But whether or not the gin had been fully manufactured is immaterial to the question here because the tax is levied not on the manufacture of gin, but of distilled spirits. The distillation of the distilled spirits used in the manufacture of the gin had been completed some time before the loss. It was completed before the liquid was transferred from the gin house to the cistern room, and, indeed, before the spirits reached the gin house, where there was added the aromatic ingredients for the making of gin.

It is clear, therefore, that the tax levied on distilled spirits, spirits, alcohol, or alcoholic spirits had attached within the meaning of section 2800 (c), since the distilled spirits had clearly come into "existence as such." The plaintiff contends, however, that although the tax may have attached, it was not payable until the spirits were withdrawn. This is true, but this only applies to distilled spirits withdrawn from bond. It does not apply to spirits which had not been deposited in a bonded warehouse. This is provided for by section 2800 (b) (2), which provides: "The tax upon any distilled spirits, removed from the place where they were distilled and not deposited in bonded warehouse as required by law, shall, * * * when knowledge of such fact is obtained by the Commissioner, be assessed by him upon the distiller of the same, and returned to the collector, who shall immediately demand payment of such tax * * *."

We do not think there can be any doubt that the tax is due under the provisions of this section and under the provisions of subsection (c) relating to the time the tax attaches, since there is no provision of law which has been called to our attention, or of which we are aware, that exempts a distiller from payment of the tax because the liquors were lost or destroyed in the process of being removed from the distillery to the cistern room. Since the tax attaches as soon as the spirits come into existence as such, it must be payable at some time thereafter. Since the spirits were never deposited in the bonded warehouse, the provision fixing the time of payment as the time when they were withdrawn therefrom cannot be applicable; but it seems clear to us that the case comes squarely within the provision for the payment of the tax when it is removed from a distillery to a place other than a bonded warehouse.

We do not think that sections 2846 (a) and 2847 (a) have any application to the case at bar. Section 2846 (a) relates to a failure to produce a certain percentage of the estimated capacity of the distillery and to a use of materials in excess of its capacity; and section 2847 provides relief for the distiller for a failure to produce this percentage of the distillery's capacity and for a use of excess materials, in certain cases. The assessment in the case at bar was not made under section 2846 (a), but under section 2800. But even if these sections were applicable, the plaintiff is entitled to relief under them for liquors lost only if they were lost without negligence on its part, and it is conceded that the loss here was occasioned solely by its negligence.

This decision is in accord with the decision of the Seventh Circuit Court of Appeals in Joseph E. Seagram & Sons, Inc.,

v. Smith, 113 F.2d 357. Cf. Greenbrier Distillery Co. v. Johnson, 6 Cir., 88 F. 638, where the whiskey was destroyed in a railway accident; Mason v. Peabody, Fed.Cas. No. 9250, where they were lost by fire and leakage; and Hamilton v. Kentucky Distilleries & Warehouse Co., 6 Cir., 288 F. 326, where they were stolen.

Plaintiff's petition, therefore, will be dismissed. It is so ordered.

