## ST. PAUL MERCURY-INDEMNITY CO. OF ST. PAUL et al. v. UNITED STATES.
### No. 11145.

Circuit Court of Appeals, Ninth Circuit.
June 27, 1946.

Robert H. Fouke, Hans A. Kruger, and Robert A. Wertsch, all of San Francisco, Cal., for appellants.

Sewall Key, Acting Asst. Atty. Gen., and A. F. Prescott, Benjamin H. Pester and Eugene E. Beyer, Sp. Assts. to Atty. Gen., all of Washington, D. C., and Frank J. Hennessy, U. S. Atty., and R. B. McMillan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellee, hereinafter referred to as the Government, instituted this suit seeking, [1] recovery from appellant Livermore Winery hereinafter referred to as taxpayer, of distilled spirits taxes [1] on brandy lost in December 1936; and [2] recovery of the same amount from taxpayer and appellant St. Paul Mercury-Indemnity Company, on a fruit distiller's bond. The bond, executed by taxpayer as principal, and the Indemnity Company as surety, was conditioned to secure, among other things, the payment of all taxes on brandy produced by taxpayer.

On December 26, 1936, taxpayer, a California corporation, was engaged in the manufacture of wines at Livermore, California. Sometime during the night of December 26-27, 1936, one Renteria, who was then employed by taxpayer as a night distiller, attached a water hose to the distilling material line in the distillery building, and turned the water into the still to wash it. He left the water on all night but neglected to open the stop line valve with the result that the water backed up into a receiving tank, which was also in the distillery, and which was partially filled with brandy.

The following morning the receiving tank was found overflowing with a mixture of brandy and water. Some diluted brandy was recovered from the tank and from the distillery material sump in the floor of the distillery. The District Court found that a total of 1619.56 proof gallons of brandy had been lost by the overflow.

The District Court also found that under § 2800 of the Internal Revenue Code [2] "the tax attached to the distilled spirits as soon as they came into existence," and that this tax "became payable by the distillery upon their removal from the place where they were distilled," since they were not deposited in a bonded warehouse. The District

---

1 "§ 2800. Tax. (a) Rate. (1) Distilled spirits generally. There shall be levied and collected on all distilled spirits (except brandy) in bond or produced in * * * the United States an internal revenue tax at the rate of $2.25 (and on brandy at the rate of $2.00) on each proof gallon * * * to be paid by the distiller or importer when withdrawn from bond. * * *

"(b) Time for payment. * * * (2) Distilled spirits not bonded. The tax upon any distilled spirits, removed from the place where they were distilled and not deposited in bonded warehouse as required by law, shall, * * * when knowledge of such fact is obtained by the Commissioner, be assessed by him upon the distiller of the same, and returned to the collector, who shall immediately demand payment of such tax, and, upon the neglect or refusal of payment by the distiller, shall proceed to collect the same by distraint. But this provision shall not exclude any other remedy or proceeding provided by law. * * *

"(c) Time of attachment. The tax shall attach to distilled spirits, spirits, alcohol * * * as soon as this substance is in existence as such, * * *." 26 U.S.C.A. Int.Rev.Code, § 2800.

2 See Note 1.

Court concluded that the 1619.56 gallons which had been lost through the overflow had been removed from the place where distilled with § 2800(b)(2) of the Internal Revenue Code,[3] and entered judgment for the Government for the full amount of the tax together with penalties and interest.

On appeal here taxpayer argues that this judgment should be reversed because [1] there was no removal of spirits "from the place where they were distilled," and [2] assuming there was a removal that the tax should be abated under § 2901(b).[4] Taxpayer also urges other alleged errors relating to the admission of certain testimony and exhibits, and to the weight of evidence supporting the District Court's finding on the quantity of spirits lost.

■ As to taxpayer's first contention that because the distilled spirits were not "removed" within § 2800 (b) (2),[5] the tax was not due and payable, both parties concede, as they must, that under § 2800(c) the tax attaches to the distilled spirits as soon as it comes into existence as such. But under taxpayer's reasoning (and assuming that the spirits were not *removed* from the distillery) the necessary conclusion is that even though the tax had attached, the tax could never be collected by the Government, because the destruction or loss of the spirits made *removal* impossible. We do not agree.[6]

Congress has provided for the *abatement* of the tax which has already *attached* in certain situations but there is nothing in the law which authorizes the abatement of the tax merely because the possibility of removal of the spirits in the sense contemplated by the statute had been destroyed through loss thereof by the overflow of the tank.

The Internal Revenue Code in 1936 (the year of the loss here in question) provided in § 2901(b) [7] for the abatement of the tax in case of actual destruction of the spirits while *in* a bonded warehouse or *after* the time the spirits should have been drawn off and placed in a bonded warehouse.

Section 2847, U.S.C.A. Int.Rev.Code, Title 26,[8] allows relief from the *assessment* of the tax for failure to produce eighty per cent of the distillery's capacity when it appears that *prior to removal* the

---

[3] See Note 1.

[4] T. 26 U.S.C.A. Int.Rev.Code, § 2901 (b):

"(b) Accidental fire or other casualty.

"The Secretary, upon the production to him of satisfactory proof of the actual destruction by accidental fire or other casualty, and without any fraud, collusion, or negligence of the owner thereof, of any distilled spirits, while the same remained in the custody of any officer of internal revenue in any internal revenue bonded warehouse or of any grape brandy withdrawn for use in the fortification of sweet wines and destroyed prior to such use while stored in the fortifying room on the winery premises, and before the tax thereon has been paid, may abate the amount of internal revenue taxes accruing thereon, and may cancel any warehouse bond, or enter satisfaction thereon, in whole or in part, as the case may be. * * * And when any distilled spirits are destroyed by accidental fire or other casualty, without any fraud, collusion, or negligence of the owner thereof, after the time when the same should have been drawn off by the storekeeper-gauger and placed in the internal revenue bonded warehouse provided by law, no tax shall be collected on such spirits so destroyed, or, if collected, it shall be refunded upon the production of satisfactory proof that the spirits were destroyed as herein specified. * * * "

[5] See Note 1.

[6] The same contention was advanced by a taxpayer and rejected by us in Rogan v. Conterno, 9 Cir., 132 F.2d 733, where a similarly worded tax on wine was held to be a tax on the production of the wine and payable despite the lack of sale or removal for sale or consumption and despite the fact that payment was normally deferred until such removal or sale under 26 U.S.C.A. Int.Rev.Code, § 3030(a) (1) (A).

[7] See Note 4.

[8] T. 26 U.S.C.A. Int.Rev.Code, § 2847.

"§ 2847. Relief from assessments under section 2846. (a) Power of Commissioner. * * *

"And the Commissioner upon the production to him of satisfactory proof of the actual destruction, by accidental fire or other casualty, and without any fraud, collusion, or negligence of the distiller of any spirits in process of manufacture or distillation, or before removal to the distillery warehouse, shall not assess the distiller for a deficiency in not producing 80 per centum of the producing capacity of his distillery as established by law when the deficiency is occasioned by such

spirits were destroyed by accidental fire or other casualty without negligence of the distiller. Section 2901(c) provides that no tax shall be assessed if the spirits are stolen under certain circumstances, and § 2902 indicates the other narrow and sharply defined conditions under which this tax which has attached may be abated.

▇ It seems clear that Congress, having provided that the tax *attaches* when the spirits come into existence, and having set forth narrowly circumscribed exceptions when the tax may be abated, intended that the tax *may* be assessed and collected when the distiller does not bring himself within one of those narrow exceptions, even though the spirits may not have been "removed."

In Greenbrier Distillery Co. v. Johnson, 6 Cir., 88 F. 638, 641, Chief Justice (then Circuit Judge) Taft held that the distilled spirits tax which had already attached under Revised Statutes § 3248, now 26 U.S. C.A. Int.Rev.Code, § 2800(c),[9] must be paid unless the distiller "can put his finger upon some clause which relieves him from its payment. The particularity with which Congress specifies the circumstances under which the tax can be remitted is itself significant of the legislative intention that, unless that claim of exemption from the payment of the tax comes within the particular description in some one of the remedial statutes, it shall not be allowed."

And in Thompson v. United States, 142 U.S. 471, 12 S.Ct. 299, 300, 35 L.Ed. 1084, the Supreme Court, also construing Revised Statutes § 3248 held that the tax could not be voided "except upon satisfactory proof, under section 3221 [R.S.], of destruction by fire or other casualty." Revised Statutes § 3221, referred to in the opinion, is

now § 2901(b) of the Internal Revenue Code [26 U.S.C.A.].[10]

In 1942, § 2901(b) was amended[11] in terms which appear to have been especially designed to give relief under the circumstances of this case. The passage of this amendment would seem to be a recognition by Congress that no such relief was possible under the law as it existed in 1936. This amendment, which is specifically made prospective only in application, fortifies our conclusion that when the tax has attached Congress has defined each situation under which the tax may be abated.

Taxpayer has not brought itself within any category entitling it to relief. The spirits were never in a bonded warehouse, and there is no evidence that this overflow occurred after the time when the spirits should have been drawn off within § 2901 (b), or that the spirits were stored in the fortifying room.

▇ The Government had the burden of proof to show the spirits came into existence as such within § 2800(c). But once this showing has been made the burden of showing that the tax has attached has been met and taxpayer must then bring himself within one of the abatement statutes, if he is to avoid payment.[12]

This the taxpayer has failed to do, and since no showing has been made that the distilled spirits in question were in a bonded warehouse, or that loss occurred after the time the storekeeper-gauger should have drawn them off, or while they were stored in a fortifying room, it is unnecessary to consider whether the loss was caused by "accidental fire or other casualty", and equally unnecessary to decide whether or not taxpayer was negligent.

---

destruction, nor shall he, in such case, assess the tax on the spirits so destroyed: * * *."

[9] See Note 1.

[10] See Note 4.

[11] 26 U.S.C.A. Int.Rev.Code, § 2901(b) (1):

"§ 2901. Loss allowances. * * *

"(b) Loss. The Commissioner of Internal Revenue may, * * * . abate any internal-revenue taxes accruing on distilled spirits if he shall find that—

"(1) The distilled spirits were not stolen or intentionally destroyed but were lost, otherwise than by leakage or evaporation, while on the premises of a registered distillery, during or after production and prior to deposit in an internal revenue bonded warehouse."

[12] Greenbrier Distillery Co. v. Johnson, 6 Cir., 88 F. 638; Thompson v. United States, 142 U.S. 471, 12 S.Ct. 299, 35 L.Ed. 1084.

Ample evidence appears in the record to support the finding of the District Court that 1619.56 gallons of brandy was lost.

The Government having sustained the burden of showing that 1619.56 gallons of brandy came into existence and that the tax attached; taxpayer having failed to show wherein it is exempt from paying the tax because of loss, and our conclusion that the questions of removal and negligence have no application, it is unnecessary to pass upon the numerous errors assigned relative to the admissions of evidence in the District Court.

Judgment affirmed.