**STITZEL–WELLER DISTILLERY, Inc. v. UNITED STATES.**

No. 1479.

United States District Court
W. D. Kentucky, at Louisville.
Jan. 17, 1949.

---

Millard Cox, of Louisville, Ky., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Harry B. De Atley, Sp. Assts. to Atty. Gen. and David C. Walls, U. S. Atty., of Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

Plaintiff filed this action May 3, 1948, to recover $1,233.90, the amount of a tax paid on 137.1 gallons of whiskey lost by casualty in the process of bottling, in plaintiff's Internal Revenue Bonded Warehouse at Shively, in Jefferson County, Kentucky.

The right of recovery is based upon paragraph (3), subsection (b) of Section 2901, Internal Revenue Code, Title 26 U.S.C.A. § 2901(b)(3).

Defendant filed its motion to dismiss the complaint claiming that—

1. This Court is without jurisdiction over the subject matter.

2. The taxes on the distilled spirits lost were due and payable and were paid by plaintiff at the time of their removal for bottling and that refund does not lie to plaintiff as taxes erroneously or illegally assessed or collected under Section 3772 of the Internal Revenue Code, 26 U.S.C.A. § 3772.

3. This proceeding is not authorized by Section 2901(b)(3), supra, because the authority of the Commissioner to abate internal revenue taxes on distilled spirits is restricted and limited to losses occurring before their withdrawal and tax payment by the distiller.

4. Plaintiff's complaint does not allege facts sufficient to warrant the Court in granting the relief sought.

At a pre-trial hearing on July 26, 1948, it was agreed by counsel that the complaint fairly sets forth the facts relative to plaintiff's claim and that a proper decision of the case depends upon the construction of Section 2901(b)(3) of the Internal Revenue Code and presents therefore, a question solely of law.

The essential facts are that on May 20, 1947, the plaintiff made application for the withdrawal from its Internal Revenue Bonded Warehouse, of ten (10) barrels of rye whiskey to be bottled in bond after the payment of the U. S. Internal Revenue taxes. This application was granted, the whiskey was regauged and the Internal Revenue taxes paid, at the rate of $9.00 per proof gallon, amounting in all to $3,312.90.

It was ascertained by the regauging that the ten (10) barrels covered in the application contained 368.1 tax gallons.

On the payment of the tax, the whiskey was removed from the storage portion of the Internal Revenue Bonded Warehouse into a separate portion thereof set apart and used exclusively for the bottling of distilled spirits.

The ten (10) barrels were placed on a dump rack and the bungs withdrawn for the purpose of emptying the whiskey into a dump trough, intending to flow the whiskey into a bottling tank on a lower floor. From

this tank, it was to be drawn off in bottles for casing and shipment.

It was discovered that a valve, which permits the diversion of spirits to an extra dump tank had not been opened. As a result of this casualty, 137.1 gallons of the whiskey spilled on the floor and were lost.

On June 3, thereafter, plaintiff filed with the Bureau of Internal Revenue his claim for refund of the taxes in the amount of $1,233.90 and that claim was rejected finally on or about December 8, 1947.

The question of jurisdiction has not been seriously contended by counsel for the Government. It was, however, contended that Section 3772 of the Internal Revenue Code determined the taxpayer's right to relief and that since that section requires, as a prerequisite for suit, (1) allegation of erroneous or illegal assessment or collection of taxes and (2) a claim for refund, and since it was not contended that the tax in question was erroneous or illegal, either in assessment or collection, there was no authorization for the suit.

Plaintiff contends that Section 3772 provides means of recovery of any money in the hands of the Government which is shown lawfully and equitably to belong to a taxpayer and which he has been unable to have refunded to him through channels of administrative procedure provided for in Section 3770 of the Code.

■ However, it seems to be conceded by the Government that under Title 28 U.S.C.A. § 41(20) [now § 1346] giving the District Court jurisdiction concurrent with the Court of Claims in suits against the United States involving claims under $10,-000, upon any law of Congress or upon any contract, express or implied, or for damages liquidated or unliquidated, in cases not sounding in tort, the Court has jursidiction.

Sections 1650 and 2800(a)(1) of the Internal Revenue Code, 26 U.S.C.A. §§ 1650, 2800(a)(1), provide that there should be levied and collected on all distilled spirits in bond or produced in or imported into the United States, an Internal Revenue tax at the rate of $9.00 on each proof gallon or wine gallon, when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer *"when withdrawn from bond."*

■ By subparagraph (c) of this same statute, it is provided that the tax shall attach to the distilled spirits, as soon as this substance is in existence as such. "Proof gallon" means 100 degrees proof or 50 percentum alcohol by volume.

Under Section 2900 of the Internal Revenue Code, 26 U.S.C.A. § 2900, the spirits must be withdrawn within eight years from the date of original entry. Sections 2903 and 2904 of the Internal Revenue Code, 26 U.S.C.A. §§ 2903, 2904, and regulations issued pursuant thereto, provide for bottling in bond. Whiskey, to be bottled in bond, must have remained in a bonded warehouse for at least four years from the time it was made, during which period of maturation, it must have been stored in wooden containers and must represent the same product made during the same distilling seasons and all the whiskey constituting *a dump* must have been produced by the same distiller at the same distillery. Nothing by way of addition or subtraction, to alter or change the original condition of the product, may be done, except the addition of distilled water to bring the whiskey to a proper proof. The proof of whiskey for domestic consumption must be exactly 100 and not less than 80, if destined for export.

■ The distiller or owner, desiring to bottle spirits in bond, has two options with respect to the time of payment of the tax. He may pay the tax and then bottle the whiskey, or he may bottle the whiskey and pay the tax afterwards. In both instances, the spirits remain in the Internal Revenue Bonded Warehouse continuously until the bottling is completed.

Section 2901 of the Internal Revenue Code, 26 U.S.C.A. § 2901, provides for loss allowance. Subparagraph (3), subsection (b) is the portion of the statute controlling plaintiff's claim in this action. It is as follows—

(b) The Commissioner of Internal Revenue may, under regulations to be prescribed by him and approved by the Secretary of the Treasury, *abate* any internal-revenue taxes *accruing* on distilled spirits if he shall find that  *  *  *

"(3) The distilled spirits were not stolen or intentionally · destroyed but were lost, otherwise than by leakage or evaporation, while the same remained in an internal revenue bonded warehouse and such loss is not allowable under subsection (a) hereof." (Italics supplied.)

The conditions, therefore, which must be established by plaintiff, are—

(1) that the distilled spirits were not stolen or intentionally destroyed, (2) were losses otherwise than by leakage or evaporation, (3) that the loss occurred while the spirits remained in an Internal Revenue Bonded Warehouse, (4) that the loss is not allowable under subsection (a).

Facts establishing all four conditions were alleged by plaintiff in its complaint and the defendant's motion to dismiss admits their verity.

Section 2901 was re-enacted in 1942. Prior to that time, Section 2901 provided for abatement of the tax in the event of a casualty loss, if the loss was not occasioned by the negligence of the owner of the spirits *and occurred prior to the payment of the tax.*

Plaintiff argues that in the re-enactment of the section, the omission by Congress of the necessity on the part of the claimant, to show that the loss was occasioned without any negligence on the part of the owner, omitting entirely that portion limiting casualty losses to those occurring before the payment of the tax, is significant. It also contends that the usual and accepted meaning of the word "abate" as used in tax and revenue laws, includes not only a forgiveness or reduction in whole or in part, but includes a refunding and cites Ballentine's Law Dictionary, 1942 Supplement, and Bouvier's Law Dictionary Rawle's Third Revision in support of that contention.

Plaintiff accepts the mandate laid down by the Court of Appeals of the Sixth Circuit in Greenbrier Distillery Co. v. Johnson, 88 F. 638, 641, to the effect that a taxpayer seeking a refund under this statute is required to "put his finger upon some clause which relieves him from its payment."

Counsel for the Government contend that the statute makes no provision for the refund of a tax paid on a loss occurring subsequent to the payment of the tax and that the use of the word "abate" in the statute prevents allowance of a claim for a loss occurring after the payment of the tax.

Both plaintiff and the Government agree that the words "abate" and "accruing" should receive their commonly accepted meaning. Government counsel is bolstered in his contention by the fact that subsection (c) of 2901 does make provision for a *refund* of the taxes where the claim arises upon a loss occurring prior to the payment of the tax, relying upon those cases in which many Courts have laid down the rule that a distiller must bring himself within the narrow exceptions provided in the Revenue Laws for the avoidance, abatement or refund of taxes, among which cases are, St. Paul Mercury-Indemnity Company v. United States, 9 Cir., 156 F.2d 425; Thompson v. United States, 142 U.S. 471, 12 S.Ct. 299, 35 L.Ed. 1084; Greenbrier Distillery Company v. Johnson, 6 Cir., supra; United States v. Buffalo Gas Company, 173 U.S. 339, 19 S.Ct. 200, 43 L.Ed. 469; Renton Investment Company v. Commissioner of Internal Revenue, 3 Cir., 131 F.2d 330; Western & Southern Life Insurance Company v. Huwe, 6 Cir., 116 F.2d 1008, 1009.

In the last case, the Court said—

"The first resort in ascertaining the legislative intent is to give words used in a statute their natural, ordinary and familiar meaning and that meaning will be applied unless Congress has definitely indicated the words in the statute should be construed otherwise. The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction."

Therefore, the question in this case is to ascertain "the plain, obvious and rational meaning" of subsection (b)(3) of Section 2901.

It is significant that in re-writing the law, Congress has omitted, as a condition to the validity of a claim for a casual loss, its occurrence prior to the payment of the tax.

as that condition had existed in the previous law.

Under the provisions of Section 2800 of the Internal Revenue Law, 26 U.S.C.A. § 2800, the tax accrued when the distilled spirits came into existence. The tax, so far as its assessment was concerned, had accrued. Provisions for the abatement on account of leakage, evaporation, casual losses, theft and destruction by fire did not lessen the validity of its assessment.

The owner of the spirits was not required to pay the tax until the spirits were withdrawn from the Internal Revenue Bonded Warehouse.

Under Section 2903 of the Code, the owner of the spirits had a right to apply for their bottling in bond before or after the payment of the tax.

Admittedly, the difference in the quantity ascertained by regauging upon payment of the tax and the amount finally bottled prior to the payment of the tax is small and inconsequential in the bottling process, whether the spirits are bottled before or after the tax payment.

It would, therefore, appear that the plain, obvious and rational meaning of this statute was to permit the owner of spirits to be relieved of the tax on so much of the spirits as is shown to have been lost by a casualty, in the case of subsection (3), subdivision (b) of the Statute, where the loss occurs while the whiskey is still in the possession and under the supervision of the Government.

"A taxing statute must be construed with regard to substance rather than to form." H. H. Miller Industries Company v. Commissioner of Internal Revenue, 6 Cir., 61 F.2d 412, 413.

If this is a correct analysis of the statute, then the word "abate" is used in the sense of allowance, and the mechanics of allowing the owner a credit upon the amount of the assessment or refundng to him the tax which he has paid, but which he has not been required to pay at the time the loss occurs, is immaterial.

For these reasons, the motion of the defendant to dismiss the plaintiff's complaint is overruled. Plaintiff is entitled to recover the tax.