277 F.2d 16
 PENN MUTUAL INDEMNITY COMPANY (Dissolved), Francis R. Smith, Insurance Commissioner of the Commonwealth of Pennsylvania, Statutory Liquidator, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 13048.
 United States Court of Appeals Third Circuit.
 Argued March 10, 1960.
 Decided April 7, 1960.
 
 John T. Curtin, Philadelphia, Pa., for petitioner.
 Elmer J. Kelsey, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.
 Before GOODRICH, STALEY and FORMAN, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an income tax case in which the Tax Court has sustained the Commissioner as against the taxpayer, 1959, 32 T.C. 653. The petitioner, as statutory liquidator of the Penn Mutual Indemnity Company, contests the decision of the Tax Court which determined a deficiency in tax for the year 1952 of $12,566.76. The taxpayer was, during its business lifetime, a mutual insurance company engaged in insuring casualty risks in Pennsylvania. There are two questions in the case. The first has to do with the jurisdiction of the Tax Court. The second has to do with the constitutionality of the tax imposed by Section 207(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C. § 207(a) (2).
 
 
 2
 The jurisdictional question will not concern us long because the Commissioner, although raising the question in the Tax Court, has abandoned it here. It was, however, picked up by a dissenting opinion in the Tax Court and we think we ought to comment on it.
 
 
 3
 In making its tax return, the taxpayer set out on form 1120M the usual figures required, including the tax due; the amount of tax shown to be due is the amount in dispute here, namely, $12,566.76. The taxpayer's counsel attached to this form a letter to the Director of Internal Revenue at the Philadelphia office saying that the company "takes the position that the imposition of an income tax against this company * * * is invalid and unconstitutional." The letter goes on to say that the company will not, acting under counsel's advice, issue a check to the United States covering any part of what is claimed to be an invalid tax.
 
 
 4
 The statute permits a taxpayer to petition the Tax Court for a redetermination after the Commissioner has determined that there is a "deficiency"[1] and defines "deficiency" as the amount by which the tax due exceeds "the amount shown as the tax by the taxpayer upon his return."[2] Since what was "shown as the tax by the taxpayer" upon the 1120M form was this $12,566.76 item and since the form itself did not show any reservation of rights on the taxpayer's part, the Commissioner took the position that there was no "deficiency." The fact that attached to this form was a letter unmistakably disputing the validity of the tax and clearly declaring that it was not going to be paid, is, according to this argument, to be disregarded.
 
 
 5
 The Tax Court was right in not going along with this argument. It would be unfortunate indeed if a taxpayer's substantive rights depended upon whether he showed his claim upon the form itself or upon a document accompanying it, especially if the document is attached to his return. Even the formal requirements for a bill of exchange, which were, and still are, rather tight because of the special nature of such a document, permitted an indorsement to be either on the bill or an allonge attached thereto.[3] And this was for a document which was designed to pass from hand to hand in the commercial world, not, as is a tax return, to be securely filed in Government repositories provided for that purpose. The Tax Court, therefore, had jurisdiction to hear the taxpayer's case.
 
 
 6
 We now turn to petitioner's attack upon the imposition of the tax upon this company. The tax was imposed under Section 207 of the Internal Revenue Code of 1939 and the appropriate portion of that section is one which imposes a one percent tax upon the taxpayer's "gross amount of income from interest, dividends, rents, and net premiums," minus dividends to policyholders and tax-exempt interest; "net premiums" are the total premiums written or received less return premiums.[4] This taxpayer, for the taxable year in question, did not profit by its business and ended up with underwriting losses $206,198.12 in excess of its "gross amount of income from interest, dividends, rents, and net premiums."
 
 
 7
 Petitioner's argument is that, since the tax-imposing provisions relied on here occur in the middle of an income tax statute and are labeled by Congress as "income tax" provisions, the sole test of their validity is whether they tax "income" within the meaning of the Sixteenth Amendment. A tax on receipts from sales without allowing a deduction for cost of goods sold, so the argument goes, is not a tax on "income," not even "gross income," but a tax on gross receipts; insurance premiums, it is contended, are a fund for the payment of loss claims and are, therefore, like sales with the loss claims analogous to cost of goods sold. Petitioner recognizes the principle that deductions are a matter of legislative grace, but contends that this principle only applies to deductions from gross income; a deduction of cost of goods sold from the receipts from sales, says petitioner, is not a matter of legislative grace but a matter of constitutional necessity.
 
 
 8
 Furthermore, says petitioner, the tax involved here is really a tax on various choses in action. A chose in action being property, a tax imposed thereon is a direct tax which, under the Constitution, must be apportioned amongst the States according to population. Admittedly this tax is not so apportioned. Therefore, says petitioner, the tax is unconstitutional.
 
 
 9
 We think petitioner's argument imposes tighter restrictions on the federal taxing power than a century and a half of court decisions warrant. The taxing power of Congress granted by Article I of the Constitution[5] "is exhaustive and embraces every conceivable power of taxation"[6] and is subject only to certain constitutional restrictions. One such restriction is found in the due process clause of the Fifth Amendment.[7] Other restrictions are, of course, found in Article I, Sections 2 and 9 requiring direct taxes to be apportioned according to population;[8] Section 8 requiring uniformity;[9] and Section 9 prohibiting export duties.[10]
 
 
 10
 It did not take a constitutional amendment to entitle the United States to impose an income tax. Pollock v. Farmers' Loan & Trust Co., 1895, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, Id., 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108, only held that a tax on the income derived from real or personal property was so close to a tax on that property that it could not be imposed without apportionment.[11] The Sixteenth Amendment removed that barrier.[12] Indeed, the requirement for apportionment is pretty strictly limited to taxes on real and personal property and capitation taxes.[13]
 
 
 11
 It is not necessary to uphold the validity of the tax imposed by the United States that the tax itself bear an accurate label.[14] Indeed, the tax upon the distillation of spirits, imposed very early by federal authority, now reads and has read in terms of a tax upon the spirits themselves, yet the validity of this imposition has been upheld for a very great many years.[15]
 
 
 12
 It could well be argued that the tax involved here is an "excise tax" based upon the receipt of money by the taxpayer. It certainly is not a tax on property and it certainly is not a capitation tax; therefore, it need not be apportioned. We do not think it profitable, however, to make the label as precise as that required under the Food and Drug Act. Congress has the power to impose taxes generally,[16] and if the particular imposition does not run afoul of any constitutional restrictions then the tax is lawful, call it what you will.
 
 
 13
 So that leaves only the question of whether it is a violation of due process to impose a tax on gross receipts regardless of the fact that expenditures exceed the receipts. That question is so well settled by authority that we do not need to take long to answer it. Deductions from a tax are a matter of legislative grace[17] and if the grace is not sufficient to leave something over for the taxpayer, he has no legal grounds for complaint, whatever the hardship may be. The mere fact of intake being less than outgo does not relieve the taxpayer of an otherwise lawfully imposed tax.[18] Thus, various federal taxes on gross receipts have been upheld in a number of cases.[19]
 
 
 14
 We are advised that the mutual casualty companies as a group bore, from 1943 through 1956, notably lighter tax burdens than competing stock companies in the same field. The stock companies' federal income taxes amounted to 31.4% of their net income; the mutuals averaged 23% of their net income as a federal tax obligation.[20] If the plan for taxation in general is based on fairness, the last argument for unconstitutionality disappears even though an individual taxpayer may find the burden pretty heavy.
 
 
 15
 The judgment of the Tax Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 "If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed * * * the taxpayer may file a petition with The Tax Court of the United States for a redetermination of the deficiency. * * *" Int.Rev.Code of 1939, § 272(a) (1), 26 U.S.C. § 272 (a) (1)
 
 
 [2]
 "As used in this chapter in respect of a tax imposed by this chapter, `deficiency' means the amount by which the tax imposed by this chapter exceeds the excess of —
 "(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over —
 "(2) the amount of rebates, as defined in subsection (b) (2), made." Int.Rev. Code of 1939, § 271(a), 26 U.S.C. § 271 (a).
 In the instant case, there were no "amounts previously assessed (or collected without assessment) as a deficiency" and no "rebates."
 
 
 [3]
 See Uniform Negotiable Instruments Law § 20 and Uniform Commercial Code § 3-202(2) (1957 ed.)
 
 
 [4]
 "§ 207. Mutual insurance companies other than life or marine
 "(a) Imposition of tax. There shall be levied, collected, and paid for each taxable year upon the income of every mutual insurance company (other than a life or a marine insurance company or a fire insurance company subject to the tax imposed by section 204 and other than an interinsurer or reciprocal underwriter) a tax computed under paragraph (1) or paragraph (2) whichever is the greater and upon the income of every mutual insurance company (other than a life or a marine insurance company or a fire insurance company subject to the tax imposed by section 204) which is an interinsurer or reciprocal underwriter, a tax computed under paragraph (3):
 "(1) If the corporation surtax net income is over $3,000 a tax computed as follows:
 * * * * *
 "(B) Taxable years beginning after March 31, 1951, and before April 1, 1954. In the case of taxable years beginning after March 31, 1951, and before April 1, 1954 —
 "(i) Normal tax. A normal tax of 30 per centum of the normal-tax net income, or 60 per centum of the amount by which the normal-tax net income exceeds $3,000, whichever is the lesser; plus
 "(ii) Surtax. A surtax of 22 per centum of the corporation surtax net income in excess of $25,000.
 * * * * * * *
 "(2) If for the taxable year the gross amount of income from interest, dividends, rents, and net premiums, minus dividends to policyholders, minus the interest which under section 22(b) (4) is excluded from gross income, exceeds $75,000, a tax equal to the excess of —
 "(A) 1 per centum of the amounts so computed, or 2 per centum of the excess of the amount so computed over $75,000, whichever is the lesser, over
 "(B) the amount of the tax imposed under Subchapter E of Chapter 2.
 * * * * *
 "(b) Definition of income, etc. In the case of an insurance company subject to the tax imposed by this section —
 "(1) Gross investment income. `Gross investment income' means the gross amount of income during the taxable year from interest, dividends, rents, and gains from sales or exchanges of capital assets to the extent provided in section 117;
 "(2) Net premiums. `Net premiums' means gross premiums (including deposits and assessments) written or received on insurance contracts during the taxable year less return premiums and premiums paid or incurred for reinsurance. Amounts returned where the amount is not fixed in the insurance contract but depends upon the experience of the company or the discretion of the management shall not be included in return premiums but shall be treated as dividends to policyholders under paragraph (3);
 "(3) Dividends to policyholders. `Dividends to policyholders' means dividends and similar distributions paid or declared to policyholders. The term `paid or declared' shall be construed according to the method regularly employed in keeping the books of the insurance company * * *." Int.Rev.Code of 1939, § 207.
 The reference in § 207(a) (2) (B) to "Subchapter E of Chapter 2" is to the excess profits tax and is inapplicable here.
 
 
 [5]
 "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises * * * but all Duties, Imposts and Excises shall be uniform throughout the United States * * *." U.S.Const. art. I, § 8, cl. 1
 
 
 [6]
 Brushaber v. Union Pac. R. R., 1916, 240 U.S. 1, 12, 36 S.Ct. 236, 239, 60 L.Ed. 493
 
 
 [7]
 See, e. g., United States v. Bennett, 1914, 232 U.S. 299, 34 S.Ct. 433, 58 L. Ed. 612; Brushaber v. Union Pac. R. R., 1916, 240 U.S. 1, 24-26, 36 S.Ct. 236, 60 L.Ed. 493
 
 
 [8]
 "Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers * * *." U.S.Const. art. I, § 2, cl. 3
 "No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before diected to be taken." U.S.Const. art. I, § 9, cl. 4.
 
 
 [9]
 See note 5 supra
 
 
 [10]
 "No Tax or Duty shall be laid on Articles exported from any State." U.S. Const. art. I, § 9. cl. 5
 
 
 [11]
 See Brushaber v. Union Pac. R. R., 1916, 240 U.S. 1, 12-19, 36 S.Ct. 236, 60 L.Ed. 493; Stanton v. Baltic Mining Co., 1916, 240 U.S. 103, 112-113, 36 S.Ct. 278, 60 L.Ed. 546
 
 
 [12]
 "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S.Const. Amend. XVI
 
 
 [13]
 See Hylton v. United States, 1796, 3 Dall. 171, 3 U.S. 171, 1 L.Ed. 556; Springer v. United States, 1880, 102 U.S. 586, 26 L.Ed. 253; Pollock v. Farmers' Loan & Trust Co., supra
 
 
 [14]
 Pollock v. Farmers' Loan & Trust Co., 1895, 157 U.S. 429, 580-581, 15 S.Ct. 673, 39 L.Ed. 759; Steward Machine Co. v. Davis, 1937, 301 U.S. 548, 581-582, 57 S.Ct. 883, 81 L.Ed. 1279
 
 
 [15]
 See Thompson v. United States, 1892, 142 U.S. 471, 12 S.Ct. 299, 35 L.Ed. 1084; Schenley Distillers, Inc. v. United States, 3 Cir., 255 F.2d 334, certiorari denied 1958, 358 U.S. 835, 79 S.Ct. 57, 3 L.Ed. 2d 72
 
 
 [16]
 Brushaber v. Union Pac. R. R., 1916, 240 U.S. 1, 12, 36 S.Ct. 236, 60 L.Ed. 493; Steward Machine Co. v. Davis, 1937, 301 U.S. 548, 581, 57 S.Ct. 883, 81 L.Ed. 1279
 
 
 [17]
 Stanton v. Baltic Mining Co., 1916, 240 U.S. 103, 108-111, 36 S.Ct. 278, 60 L. Ed. 546; Burnet v. Thompson Oil & Gas Co., 1931, 283 U.S. 301, 304, 51 S.Ct. 418, 75 L.Ed. 1049; Helvering v. Independent Life Ins. Co., 1934, 292 U.S. 371, 381, 54 S.Ct. 758, 78 L.Ed. 1311; New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L. Ed. 1348; White v. United States, 1938, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Commissioner of Internal Revenue v. Sullivan, 1958, 356 U.S. 27, 28, 78 S. Ct. 512, 2 L.Ed.2d 559
 
 
 [18]
 Wilson Milling Co. v. Commissioner, 8 Cir., 1943, 138 F.2d 249, 251, certiorari denied 1944, 320 U.S. 800, 64 S.Ct. 430, 88 L.Ed. 483
 
 
 [19]
 See e. g., Pacific Ins. Co. v. Soule, 1868, 7 Wall. 433, 74 U.S. 433, 19 L.Ed. 95; Spreckels Sugar Refining Co. v. McClain, 1904, 192 U.S. 397, 24 S.Ct. 376, 48 L. Ed. 496; United States v. Kahriger, 1953, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. Cf. Commissioner of Internal Revenue v. Sullivan, 1958, 356 U.S. 27, 29, 78 S.Ct. 512, 2 L.Ed.2d 559
 
 
 [20]
 Scott Taxation of Casualty Insurance Companies, 44 Va.L.Rev. 935, 936-37 (1958). The author points out that the mutuals are the ones defending the tax structure of Section 207 while the stock companies are attacking it. Id. at 938
 For a brief summary of the history of Section 207 of the Internal Revenue Code of 1939, see Vickrey, Insurance Under the Federal Income Tax, 52 Yale L.J. 534, 573-75 (1943).