## In re J. MENIST CO., Inc.

(Circuit Court of Appeals, Second Circuit.  February 5, 1923.  Rehearing Denied February 20, 1923.)

No. 84.

I. **Bankruptcy** ⬗➾440—**Improper practice in proceeding for review.**

When it is clear that an appeal or a petition to revise is the proper method for review of an order or decree, the practice of resorting to both methods is not to be commended.

2. **Subrogation** ⬗➾33(1)—**Priorities of sureties on bonds to United States.**

Rev. St. § 3468 (Comp. St. § 6374), providing that the surety on a bond given to the United States, the principal in which is insolvent, who pays the debt due on the bond, "shall have the like priority" for recovery of the money from the estate of the principal as is secured to the United States, does not subrogate such surety to any privilege or advantage possessed by the United States by reason of its sovereignty.

3. **Bankruptcy** ⬗➾328—**Surety held not entitled to prove claim after one year.**

The surety on a bond given to the United States, which settled and paid its obligation on the bond after the principal had been adjudged a bankrupt *held* not entitled by Rev. St. § 3468 (Comp. St. § 6374), to prove its claim against the bankrupt estate after expiration of the year allowed for filing claims.

4. **Bankruptcy** ⬗➾316(3)—**Claim of a surety arising from compromise and settlement of pending suit not one "liquidated by litigation."**

The claim of a surety on bond given by bankrupt, arising from compromise and settlement by the surety of a suit on the bond brought after the bankruptcy, is not one "liquidated by litigation," within Bankruptcy Act, § 57n (Comp. St. § 9641).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Liquidated by Litigation.]

Petition to Revise and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of J. Menist Company, Inc., bankrupt. From an order rejecting its claim, the National Surety Company appeals, and also brings petition to revise. Petition to revise dismissed, and order affirmed on appeal.

On April 5, 1919, the National Surety Company, petitioner herein, upon the request of J. Menist Company, Inc., executed its bond in the sum of $5,000 in favor of the United States, conditioned that the company aforesaid would dispose of certain cases of condensed milk for fertilizing or similar or manufacturing purposes. The J. Menist Company, Inc., failed to dispose of the milk in compliance with the provisions of the bond. An involuntary petition in bankruptcy was filed against J. Menist Company, Inc., on March 22, 1920, and on April 6, 1920, an order was entered adjudicating the company a bankrupt.

A year later, on April 28, 1921, the United States instituted an action against the bankrupt and the National Surety Company to recover the sum of $5,000, which action the latter settled and compromised for $3,500, and that sum was paid on March 31, 1922, or two years after the entry of the order of the adjudication in bankruptcy. On May 2, 1922, the surety company attempted to file its proof of claim with the referee in bankruptcy, but the claim was not accepted on the ground that it was not filed in time. The surety company thereupon applied to the District Court for permission to file its proof of claim, and its application was denied in an order entered on June 21, 1922. From this order both a petition to revise was filed and an appeal was taken.

William J. Griffin, of New York City (George Pfeil, of New York City, of counsel), for petitioner and appellant.

Zalkin & Cohen, of New York City (Moses Cohen and Emanuel Fichandler, both of New York City, of counsel), for bankrupt.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). Bankruptcy Act, § 57n (Comp. St. § 9641), provides that:

"Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication, or if they are liquidated by litigation, and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment: Provided, that the right of infants and insane persons without guardians, without notice of the proceedings, may continue six months longer."

The claimant herein, not having filed its claim within one year after the adjudication, bases its right to proceed upon section 3468 of the Revised Statutes (Comp. St. § 6374), which provides as follows:

"Sec. 3468. Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States, and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

The question presented therefore is whether a surety on a bond executed to the government is subrogated to whatever advantages the government might claim in a proceeding against the insolvent estate.

[1] Before we proceed to a consideration of that question, we find it necessary to say that, as the case has been brought here by petition to revise and appeal, we must dismiss the petition to revise. Under Bankruptcy Act, § 25a (Comp. St. § 9609), an appeal is the proper method to bring here a judgment rejecting a claim. The petition to revise must therefore be dismissed, as improperly brought. In dismissing it, we cannot refrain from condemning the practice of bringing both a petition to revise and an appeal in a case like this, in respect of which there can be no possible doubt as to the proper remedy under the act. There are, of course, doubtful cases, in which counsel may be justified in resorting to both methods of bringing the case into this court, leaving it to the court to determine which of the two methods was the one the act required to be used. But this case is not of that class, and there can be no excuse for the loose and careless practice of resorting to both remedies, where it is perfectly plain which method under the act is the one which the party must employ.

[2] This brings us to a consideration of the case upon its merits. The surety company contends that it may file its claim in bankruptcy after the expiration of one year because the statute of limitations does not run against the government and that the provision that

claims shall not be proved against the bankrupt estate subsequent· to˜ one year after adjudication has no application to claims due to the United States. This question was not passed upon in the court·below, and in the view we take of the case need not be determined here. This court decided in Re Anderson (C. C. A.) 279¹ Fed. 525, that the United States are bound by the Bankruptcy Act, and that they must file a claim for taxes as any other creditor if they desire to share in the estate. And see· In re Tidewater Coal Exchange (C. C. A.) 280· Fed. 648, 653. Whether a distinction exists between a claim for taxes and other claims, such as the one now before the court, is one upon' which we express no opinion.

For the purpose of the argument we shall assume that the United States are not bound by the Bankruptcy Act, or that part of it which requires claims to be proved within one year. But if the United States had, as a sovereign, the privilege of enforcing a claim not proven within a year, we are satisfied that the surety company cannot assert the same privilege. If the United States are not bound by a statute of limitations, the surety company cannot claim that it is entitled to enjoy the same advantage or privilege. The argument which the surety company makes is that inasmuch as it has paid the debt, it is by subrogation entitled to all the rights and privileges which the United States might have asserted. To this we find ourselves quite unable to agree.

The doctrine of subrogation is not questioned. It is old in the law and had its existence in the Roman law. As Mr. Justice Story pointed out in his Equity Jurisprudence (volume 1, § 635), that law gave to a surety upon a bond or security who paid it to the creditor a right to a cession of the debt and a subrogation to all the rights and actions of the creditor against the debtor. It was from that source that the doctrine was derived into the equity jurisprudence; and, as Story observed, the doctrine belonged to an age of enlightened policy and refined although natural justice. Subrogation is the doctrine which enables a party secondarily liable and who has paid the debt to stand in the place of the creditor and avail himself of the benefit of any securities or remedies which the original creditor held as against the principal debtor and by the use of which the party paying may be made whole. Bispham's Equity (8th Ed.) § 335. It was granted by Congress to sureties on bonds given to the United States in section 3468 of the Revised Statutes already set forth in this opinion; and that section is substantially a reproduction of the second proviso of the sixty-fifth section of the Act of March 2, 1799, 1 Stat. 676, to which we shall later refer more fully.

[3] But, while it is admitted that the surety company succeeded to all the rights of the United States against the bankrupt, it is not our understanding that section 3468, upon which the surety company so confidently relies, was intended to confer or does confer all the advantages which the United States might assert against the bankrupt. The section referred to merely gives to the surety the right to bring suit in its own name for the recovery of all moneys which the surety has paid, and it gives him in addition the same priority in the assertion of that right which is given to the United States. But the question

here does not relate to priorities; neither does it involve the right of the surety to sue in its own name. It relates to an advantage which the United States possesses as a sovereign and which individuals do not possess.

It is plain that the United States in their capacity of sovereign have certain privileges or advantages of great importance. For example, in suits brought by the United States the jurisdiction of the federal courts is not dependent upon the value of the matter in dispute. Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820. In controversies in which the United States is a party the federal courts have jurisdiction without reference to the citizenship of the other party or the nature of the subject-matter of the controversy. Const. art. 3, § 2. And when the United States is a suitor in the courts, they are not liable to costs. In United States v. Barker, 2 Wheat. 395, 4 L. Ed. 271, Chief Justice Marshall said: "The United States never pay costs." The claim seems to be that, in case a surety company finds it necessary to sue the principal on a bond, which it has given the United States, the surety is entitled to claim these and other like advantages which the United States might be entitled to assert. We certainly do not so understand the law, and we are not aware of any case in which such doctrine is laid down.

In United States v. Preston, 4 Wash. C. C. 446, 27 Fed. Cas. 617, No. 16,087, which came before Mr. Justice Washington sitting in the Circuit Court in 1824, he had occasion to consider whether a surety on a bond given to the United States had a right to sue and recover in the District Court in the name of the United States with the preference, priority, and advantage by law secured to them. In considering that question he was called upon to construe the Act of March 2, 1799, which provided that, if a surety on a bond given to the United States paid the bond, he should "have and enjoy the like advantage, priority, or preference, for the recovery and receipt of said moneys, out of the estate and effects of such insolvent or deceased principal as are reserved and secured to the United States, and shall and may bring and maintain a suit or suits upon the said bond or bonds, in law or equity, in his, her, or their own name, or names, for the recovery of all moneys paid thereon." In his opinion the "advantage" spoken of in the clause cited was "nothing more than the preference reserved to the United States by the preceding part of the section." And he stated his opinion as follows:

"My opinion, therefore, as to the construction of this section is, that the term 'advantage' is used as synonymous with 'preference and priority,' which in reference to the subject of insolvency in the principal, are clearly synonymous. A preference of payment is nothing more or less than a right to be first paid, and a right of priority is a preference of payment before the other creditors of the insolvent; and such a preference or priority is an advantage enjoyed by the United States, and is by this section conferred on the surety. Had the Legislature intended to bestow upon the surety all the advantages secured and reserved to the United States, it is not likely that such an intention would have been expressed by the terms 'the like advantage, preference or priority.'"

And the decision of the Supreme Court in United States v. Ryder, 110 U. S. 729, 740, 4 Sup. Ct. 196, 28 L. Ed. 308, indicates that that

court does not understand that the advantages which the surety is entitled to claim embrace all the advantages which the United States as distinguished from individuals may possess in proceedings they may institute, and that they include "the form and modes of proceeding."

[4] It is, however, said that this claim, which the surety is now seeking to enforce against the bankrupt's estate, was in litigation and therefore entitled under section 57n, hereinbefore set forth to be filed within 60 days after the rendition of the judgment. This is based on the fact mentioned in the statement preliminary to this opinion that the United States commenced an action against the bankrupt and the surety on April 28, 1921, to recover on the bond, which action never went to judgment having been compromised on March 31, 1922, by the surety's payment of $3,500. And as the surety attempted to file proof of claim on May 2, 1922, which was within 60 days after the case was settled the proof was in time.

The action brought by the United States, above mentioned, never went to final judgment, and the claim of the surety company was never liquidated by litigation. At the time the petition in bankruptcy was filed the claim of the surety company was contingent, and the Bankruptcy Act makes no provision for the proof of such claims. In re Mullings Clothing Co., 238 Fed. 58, 67, 151 C. C. A. 134, L. R. A. 1918A, 539. Section 57n is therefore without application.

Order affirmed.