ERIE RAILROAD COMPANY and Atlantic Mutual Insurance Company

v.

UNITED STATES.

No. Cong. 3–56.

United States Court of Claims.

Dec. 4, 1957.

Harry Everett Pendleton, Washington, D. C., for plaintiffs.

Benjamin H. Pester, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the briefs.

WHITAKER, Judge.

This case has been referred to us by the House of Representatives under 28 U.S.C. § 1492 and 2509, pursuant to the House Resolutions set out in findings 3 and 4, for such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand as a claim, legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the plaintiffs.

Section 1492 authorizes us to render judgment on a claim so referred if we have jurisdiction of the claim under other acts of Congress. We would, of course, have jurisdiction of a claim such as plaintiffs' present claim, except for the fact that the statute of limitations within which claims against the United States must be presented in this court has long since run. It is not within our power, therefore, to render judgment on the claim, but, of course, the running of the statute is not a bar to the allowance of the claim by Congress. However, we know of no special circumstances in this case which would justify Congress in doing so. The facts respecting plaintiffs' delay in presenting their claim follow.

On June 16, 1945, the National Distillers Products Corporation withdrew from bond 8,080.90 wine gallons of alcohol, equivalent to 15,353.60 proof gallons, and shipped them from Peoria, Illinois, consigned to New England Distillers, Inc., at Clinton, Massachusetts. In transit the liquors were destroyed in a railroad wreck.

The National Distillers Products Corporation filed a claim with the Erie Railroad Company in the total amount of $147,730.62, covering the value of the alcohol lost in the sum of $9,135.39, the internal revenue tax that had been paid thereon of $133,182.40, and the prepaid freight of $412.83. Subsequently, on December 20, 1945, the National Distillers Products Corporation filed with the District Director of Internal Revenue a claim for refund of the taxes paid on the liquors lost. This claim was denied by the Commissioner of Internal Revenue on January 16, 1946, on the ground that there was no provision of law authorizing

the refund of internal revenue taxes which had been properly paid on distilled spirits, and that the taxes in question had been properly paid. Following this, the Erie Railroad Company on March 6, 1946, paid the National Distillers Products Corporation the full amount of its claim of $147,730.62.

Notwithstanding rejection of the claim for refund of the taxes paid on January 16, 1946, no further effort was made by anyone to recover them until the introduction in the House of Representatives of H. R. 5918 on April 27, 1955. Presumably, this was because the parties did not believe that their claim had sufficient validity to justify any further effort to secure its allowance.

On April 3, 1950, this court decided the case of Stephano Bros. v. United States, 89 F.Supp. 693, 116 Ct.Cl. 503, in which we held that a shipper of tobacco was entitled to recover the value of stamps affixed to a shipment of cigarettes which had been destroyed in a railroad wreck. This was followed by our decision in Philip Morris & Co. to Use of Great Am. Ins. Co. v. United States, 100 F.Supp. 820, 120 Ct.Cl. 703, decided November 6, 1951, in which we reaffirmed our previous holding. These decisions apparently encouraged plaintiffs to make a further effort to recover the tax paid on this alcohol. At any rate, in their briefs they rely largely on these cases in support of their claim.

But, even if it could be said that our decision in Stephano Bros. v. United States, supra, recognized a right to recover excise taxes on tobacco not previously recognized, and if this decision could be applied to plaintiffs' claim, as they seek to do, nevertheless, it appears that they waited much longer than the statutory period before filing their petition in this court. While the statute of limitations applicable to most claims against the United States is six years, the statute applicable to the recovery of internal revenue taxes is two years. Section 3772 of the Internal Revenue Code of 1939; 26 U.S.C. 1952 ed. sec. 3772. The time for filing suit for the recovery of these taxes, therefore, expired some eight years before the suit was filed in this court, and four years after our decision in Stephano Bros. v. United States, supra.

Whether so long a delay in presenting any claim which plaintiffs may have should be waived by Congress, even if plaintiffs have a valid claim, is of course a matter for Congress to determine.

But, as we will more fully point out in a discussion of the claim on the merits, we do not think plaintiffs' claim can possibly be brought within our decisions in the Stephano Bros. and Philip Morris cases, supra.

■ *Second.* We are further of opinion that the National Distillers Products Corporation is not entitled to recover the taxes paid on this liquor, notwithstanding its destruction. Of course if the National Distillers Products Corporation is not entitled to recover them, the plaintiffs are not entitled to recover, because the only claim they could have is derived from the claim of National Distillers Products Corporation.

■ Section 2800 of the Internal Revenue Code of 1939 levies a tax on all distilled spirits "produced in or imported into the United States" at a certain rate, "to be paid by the distiller or importer when withdrawn from bond." Subsection (c) of section 2800 provides, "the tax shall attach to the distilled spirits * * as soon as this substance is in existence as such." Hence, the tax is one on the production of distilled spirits, and not a consumer's tax as plaintiffs insist. This is clearly recognized by the decisions of the Supreme Court in Thompson v. United States, 142 U.S. 471, 12 S.Ct. 299, 35 L.Ed. 1084; United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 71 L. Ed. 279; and United States v. Rizzo, 297 U.S. 530, 56 S.Ct. 580, 80 L.Ed. 844, as well as by other cases.

■ Therefore, at the moment the production of distilled spirits is complete, liability for the tax accrues. However, if spirits are distilled in bond, and kept in a bonded warehouse for a time, the tax

is not payable until they are withdrawn from bond, but at that time the tax must be paid.

Therefore, when the National Distillers Products Corporation withdrew this alcohol from bond, everything had occurred to fix liability for the tax. The amount of that liability had been determined, and the time for payment of the tax had arrived. The tax was paid and the transaction was closed. Anything that happened to the liquor thereafter had no effect on the amount of taxes owing to the Government on account of the production of these liquors.

Although the tax is on the production of the distilled spirits and accrues when production is complete, still, the law makes certain allowances for loss of the liquor after production and while it remains in bond. An allowance is made for leakage or evaporation, or if the liquor is otherwise lost while on the premises of a registered distiller and before deposit in an internal revenue bonded warehouse, or if lost while being transferred between buildings constituting a bonded warehouse, or while being transferred by a common carrier from a distillery to a bonded warehouse, or between bonded warehouses, or if the spirits are withdrawn for use in the fortification of sweet wines, and are lost while stored in bonded winery premises, or if they are lost by theft, or if they are voluntarily destroyed by the distillers because unfit for beverage purposes. In all such cases the Commissioner of Internal Revenue is authorized to abate the tax on the liquor so lost, that is to say, the liability for the tax is extinguished. And, if taxes have been inadvertently paid on spirits so lost, subsection (c) of section 2901, as amended by the Act of April 8, 1942, permits the refund of them. But this, by its terms, refers only to taxes which may have been paid *subsequent to the loss or destruction* of the liquor in the manner set out above. It has no ap-

plication to a loss of liquor after payment of the tax.

When the spirits have once been withdrawn from the warehouse, and the tax has been paid, no provision is made in the law for loss or destruction of them thereafter. The only provision for refund of taxes paid on spirits lost and destroyed is for spirits lost or destroyed while under bond.

No court had ever held to the contrary until the District Court for the Western District of Kentucky decided Stitzel-Weller Distillery v. United States, D.C., 82 F.Supp. 50, affirmed, 6 Cir., 180 F. 2d 357.[1] In this case the court said that recovery might be had for a loss of spirits occurring after the payment of the tax if at the time the liquor was still in the possession and under the supervision of the Government in a bonded warehouse. This was a departure from the opinion that the loss or destruction must have occurred before the tax was paid, and when this decision was called to the attention of Congress it very promptly added to section 2901(c), providing for refunds, the following:

"Nothing in section 2901 as hereby amended, or as heretofore amended, shall be construed to authorize refund of the tax where the loss occurred after the tax was paid."

This was section 3 of the Act of February 21, 1950, c. 36, 64 Stat. 6

The Internal Revenue Code of 1954 is quite as explicit. It reads at section 5011 (a) (3):

"* * * No tax shall be remitted or refunded under this subsection where the loss occurred after the tax was determined (as provided in section 5006(a)), and the spirits withdrawn from bond."

In short, liability for the tax accrues when production of the distilled spirits is complete, and it is payable when the spirits are withdrawn from bond, less such amount of the tax as may have ac-

---

1. This case does not help plaintiff because it was based on the fact that, while the tax had been paid, the spirits had not been released from bond, and, hence, were still under the control of the Government.

crued on spirits lost in certain ways before withdrawal from bond. But after withdrawal from bond and payment of the tax, Congress has expressly forbidden the remission or refund of taxes on spirits thereafter lost or destroyed.

■ But plaintiff says that section 3113(a) of the Internal Revenue Code of 1939 permits the refund of taxes lost by a casualty or other unavoidable cause occurring during distillation, or redistillation, denaturation, withdrawal, piping, shipment, warehousing, storage, packing, transfer, or recovery, of any such alcohol, and since these spirits were being shipped, it may recover the tax on the spirits lost in this railroad wreck. We are, however, of opinion that all of the processes mentioned in the section refer to processes before the spirits are withdrawn from bond. No court has ever held to the contrary.

■ Most of the processes mentioned of necessity take place before withdrawal from the bonded warehouse, e. g., distillation, redistillation, denaturation, piping, warehousing, storage. Hence, it would seem to follow that the "shipment" in mind was a shipment from distillery to bonded warehouse, from one building in a bonded warehouse to another, or from one bonded warehouse to another, or any shipment while the spirits were still under bond.

■ This must be the shipment that was in mind, because the bond is given to secure payment of the tax that has already accrued on the spirits, and when the tax is paid the bond is discharged; the liquors, leaving the custody of the Government, become the property of the owner to do with them what he please, and, of course, at his own risk.

Again, this must be the proper construction of the section, because otherwise it would be in express conflict with section 2901(c), as amended, as we have pointed out above. Congress, of course, did not mean to prohibit the refund by one section, and allow it in a succeeding section of the same statute. In enacting the Internal Revenue Code of 1939 it did not mean to allow a refund of taxes only

on spirits lost before the tax was paid, and in a succeeding section allow a refund on account of spirits lost or destroyed both before and after payment of the tax.

This is made quite clear by the 1954 Internal Revenue Code. Section 2901(c) of the 1939 Code appears in the 1954 Code as section 5011(a) (3). This section expressly prohibits the refund of a tax where the loss occurs after the tax is determined and the spirits withdrawn from bond. Section 3113(a) is carried into the 1954 Code as subsection (c) of the same section 5011. Congress could not have intended both to prohibit and to allow the refund by what was said in the same section.

We have no doubt that this is the proper construction of section 3113(a) of the 1939 Code. But, whether it is or not, this section is of no help to plaintiffs because it is limited to domestic alcohol produced at an industrial alcohol plant.

Chapter 26 of the Internal Revenue Code relates to the tax on liquor. Subchapter A relates to the tax on distilled spirits, subchapter B relates to wines, and subchapter C relates to industrial alcohol. Section 2901, relating to losses of distilled spirits, is contained in subchapter A, containing all the provisions specially applicable to distilled spirits; section 3113 is contained in subchapter C, relating to industrial alcohol.

In the 1954 Code the provisions of both section 2901 and section 3113 are found in section 5011. Section 3113 of the 1939 Code is subsection (c) of section 5011 of the 1954 Code, and this subsection states that it relates to alcohol produced at an industrial alcohol plant.

The distilled spirits produced at the distillery of the National Distillers Products Corporation were not produced at an industrial alcohol plant. The National Distillers Products Corporation produced distilled spirits for beverage purposes.

*Third.* It is clear that plaintiffs' claim is not covered by our decisions in the Stephano Bros. and Philip Morris cases.

Recovery of the taxes paid on the tobacco shipped in the Stephano case and lost in a railroad wreck was allowed under a provision applicable alone to tobacco, and not to liquor, which permits the redemption of stamps on "tobacco, snuff, cigars, or cigarettes which, after removal from factory or customhouse for consumption or sale, the manufacturer or importer withdraws from the market." We held that the cigarettes lost in this wreck had been withdrawn from the market within the meaning of this statute, 26 U.S.C. § 2198; but, as stated, this statute has no application whatever to distilled spirits.

The provisions of the Internal Revenue Code applicable to tobacco have no application to liquor, and the provisions applicable to liquor have no application to tobacco. They have no relation one to another, no analogy, no affinity, no consanguinity; they are not on speaking terms.

The Government raises other defenses to plaintiffs' claim, but we do not discuss them because we are so clearly of the opinion that plaintiffs are not entitled to recover on the merits, irrespective of the statute of limitations. We know of no special considerations which would justify making an allowance to plaintiffs not enjoyed by others in a similar situation.

We are of opinion that the National Distillers Products Corporation has neither a legal nor an equitable claim against the United States, and, *a fortiori*, the Erie Railroad Company and the Atlantic Mutual Insurance Company have neither a legal nor an equitable claim against the United States.

This opinion, together with the findings of fact, will be certified to the Congress pursuant to House Resolution 402 of the 84th Congress, 2d Session.

It is so ordered.

JONES, Chief Judge, GEORGE THOMAS WASHINGTON, Circuit Judge, sitting by designation, and MADDEN and LITTLETON, Judges, concur.

QUINCY MINING COMPANY
v.
UNITED STATES.
No. 467–53.

United States Court of Claims.
Dec. 4, 1957.

