The AETNA CASUALTY AND SURETY COMPANY, a corporation,

v.

SHERWOOD DISTILLING COMPANY, Inc., a corporation, the United States of America, John L. Moore, Administrator of General Services, County Commissioners of Carroll County, a municipal corporation, the Mayor and Common Council of Westminster, a municipal corporation, Union Trust Company of Maryland, a corporation, Peoples First National Bank and Trust Company, a national banking corporation, William Hoffenberg, Louis Mann, Heat and Power Corporation, a corporation, Joseph E. Seagram & Sons, Inc.

Civ. No. 11956.

United States District Court
D. Maryland.

July 5, 1967.

 

William B. Kempton, Baltimore, Md., and Alexander M. Heron and John A. Whitney, Washington, D. C., for plaintiff.

Ward B. Coe, Jr., Charles B. Keenan, Jr., and Anderson, Coe & King, Baltimore, Md., for Sherwood Distilling Company, Inc., William Hoffenberg and Louis Mann.

Stephen H. Sachs, U. S. Atty., and Roger C. Duncan, Asst. U. S. Atty., Baltimore, Md., for United States and John L. Moore.

A. Earl Shipley, Westminster, Md., for County Commissioners of Carroll County.

D. Eugene Walsh, Robert J. Martineau and Walsh, Fisher & Martineau, Westminster, Md., for Mayor and Common Council of Westminster.

Morton H. Perry, Baltimore, Md., for Union Trust Company.

Richard F. Cleveland and Semmes, Bowen &' Semmes, Baltimore, Md., for Pittsburgh National Bank (formerly Peoples First National Bank and Trust Co.)

Morris Rosenberg, Baltimore, Md., for Joseph E. Seagram & Sons, Inc.

THOMSEN, Chief Judge.

Plaintiff, Aetna Casualty and Surety Company (Aetna), upon equitable principles of subrogation, seeks to enforce the lien rights of the United States arising under section 2800(e)(1) of the Internal Revenue Code, 1939, quoted in the next paragraph of this opinion, against property belonging to the defendant Sherwood Distilling Company, Inc. (Sherwood), located in the City of Westminster, Carroll County, Maryland. Joined as parties defendant are all persons who have any lien or recorded claim against the property.[1] Jurisdiction is claimed and exists under 28 U.S.C. §§ 1331, 1332, 1340 and 2410. Aetna prays that its claimed lien be enforced and be declared superior to all other claims against the property, that the Court appoint receivers to sell the property and that the proceeds of sale be first used to satisfy its claim.[2]

Aetna was surety for Sherwood on certain bonds conditioned inter alia upon Sherwood's payment of the tax on distilled spirits manufactured and stored in the property in question, imposed by section 2800, I.R.C., 1939,[3] which provided, in pertinent part:

"§ 2800. *Tax*

"(a) *Rate*

"(1) *Distilled spirits generally.* There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $10.50 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond.

\* \* \* \* \* \*

"(C) *Time of attachment.* The tax shall attach to distilled spirits, spirits,

---

1. Union Trust Company of Maryland, William Hoffenberg and Louis Mann claim under a mortgage. Pittsburgh National Bank (formerly known as Peoples First National Bank and Trust Company) and Joseph E. Seagram & Sons, Inc., claim as judgment creditors, as does the Administrator of General Services, on behalf of the United States, based upon a judgment obtained by the Reconstruction Finance Corporation. The State of Maryland, Carroll County and the Common Council of Westminster have tax claims.

2. The complaint also asks that a general receiver be appointed for Sherwood with authority to receive and collect its assets and distribute the same ratably among its creditors, but that relief is not being pressed at this time.

3. The similar provisions in the 1954 Code are contained in sections 5001 and 5004.

alcohol or alcoholic spirit, within the meaning of subsection (b) of section 2809 as soon as this substance is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process.

\* \* \* \* \* \*

"(e) *Lien.*

"(1) *Property subject to.* The tax shall be a first lien on the spirits distilled, the distillery used for distilling the same, the stills, vessels, fixtures, and tools therein, the lot or tract of land whereon the said distillery is situated, and on any building thereon from the time said spirits are in existence as such until (except as provided in paragraph (3)), the said tax is paid."

The principal issues to be determined at this time are: (1) when the lien created by section 2800(e) (1), supra, attached; and (2) whether Aetna, by paying the taxes, interest and penalties, became subrogated to that lien. Other issues include: (3) the extent of the area to which the lien attached; (4) the rights of the Administrator of GSA as successor to RFC; and (5) questions of priority among the several defendants.[4]

Most of the essential facts have been stipulated. The others are necessary or reasonable inferences from the stipulated facts and exhibits.

### Facts

Since sometime before 1945 Sherwood owned about 2.82 acres of land in West-minster, Carroll County, Maryland.[5] The land is improved by a distillery and warehouse, which Sherwood operated as Registered Distillery No. 12—Maryland and Internal Revenue Bonded Warehouse No. 12—Maryland, from 1945 or earlier until 1952. The entire 2.82 acres was not included in the area described in the distiller's notice, Form 27-A, required by Title 26, Chapter I, of the 1940 Regulations.[6] Part of the property not included was improved by an office building and other construction; part was unimproved. The Director, Alcohol and Tobacco Tax Division of the Internal Revenue Service, has stated: "We would not consider the lien under section 2800 (e) as attaching to land or buildings other than as described in Form 27-A".

In the operation of the distillery and warehouse Sherwood gave bonds to the United States as required by law. By bond dated April 18, 1941, designated a Transportation and Warehousing Bond, Sherwood, with Aetna as its surety, bound itself to the United States in the penal sum of $200,000. The condition of the bond was that Sherwood should pay or cause to be paid the tax imposed by law then or thereafter in force together with interest and penalties on all distilled spirits then or thereafter deposited in the warehouse, before the withdrawal therefrom and within eight years from the date of the first entry thereof, as well as on distilled spirits then or thereafter in transit thereto from any other Internal Revenue Bonded Warehouse, and further that it should comply with all other requirements of law and regulations respecting such distilled spirits and the warehouse in which they were deposited.

4. It has been agreed that "adjudication of the respective rights in said mortgage as between Louis Mann, Union Trust Company of Maryland, and its assignees Hilary W. Gans and James B. Diggs, deceased, and William Hoffenberg will not be decided in this proceeding but are reserved for adjudication by the Circuit Court for Carroll County in two cases there pending \* \* \* ".

5. Bounded on the east by Sherwood Avenue, on the north by Manchester Road and on the west by Winters Alley.

6. In section 183.3(j) of said Regulations, "Distillery premises" are defined to "mean the lot or tract of land described in the distiller's notice, Form 27-A, and the distillery and other buildings and fixtures situated on and constituting a part of such lot or tract of land."

By Consent of Surety dated March 27, 1945, Sherwood and Aetna consented that the Transportation and Warehousing Bond of April 18, 1941, be changed "to support Distiller's Bond, Form 30, executed March 27, 1945, effective May 1, 1945, in the penal sum of $100,000 and written without surety to cover the operation of Registered Distillery No. 12." The effective date of the Consent was May 1, 1945. The obligors agreed to remain bound by the terms of the bond as changed to all intents and purposes as if a new bond with such terms were currently executed. By the Distiller's Bond, Form 30, Sherwood bound itself (and by its Consent, Aetna became bound) to the United States in the penal sum of $100,000 for the faithful compliance of all provisions of law and regulations relating to the duties and business of distillers and the payment of all penalties or fines imposed upon it in that connection and the payment of all taxes imposed then or thereafter by law together with penalties and interest on distilled spirits produced by it.[7]

On March 30, 1946, Sherwood executed a similar Distiller's Bond in favor of the United States covering the period beginning May 1, 1946, and on the same day Sherwood as principal and Aetna as surety executed another and similar Consent of Surety to support the new Distiller's Bond. Aetna was therefore bound as surety on the two Distiller's Bonds, each in the amount of $100,000, covering the respective periods May 1, 1945, to April 30, 1946, and May 1, 1946, to April 30, 1947. During each of those two fiscal years Sherwood distilled certain spirits; as a result thereof, the tax referred to in section 2800, Internal Revenue Code, 1939, not only attached to those spirits, but also became a first lien on the distillery, etc., as soon as those spirits came into existence as such. The spirits were duly placed in the bonded warehouse.

In accordance with the applicable statutory provisions,[8] assessments were made by the Collector of Internal Revenue at the expiration of eight years from the date of distillation upon spirits distilled during each of those periods.

On April 5, 1954, the United States filed notice of tax lien on account of the unpaid taxes on those distilled spirits in the amount of $199,188.10. Thereafter similar notices of lien were filed on April 30, 1955, for $58,144.80; on April 30, 1955, for $33,736.50 and on November 10, 1955, for $54,516.00. All of these notices were filed in the office of the Clerk of the Circuit Court for Carroll County and still remain on record.

7. The Distiller's Bond was required by section 2814(a) (1) of the 1939 Code, the first paragraph of which provided: "Every person intending to commence or to continue the business of a distiller shall, on filing with the collector his notice of such intention, and before proceeding with such business, and on the 1st day of May of each succeeding year, execute a bond in the form prescribed by the Commissioner, conditioned that he shall faithfully comply with all the provisions of law relating to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions; and that he shall not suffer the lot or tract of land on which the distillery stands, or any part thereof, or any of the distilling apparatus, to be incumbered by mortgage, judgment, or other lien, during the time in which he shall carry on said business. Said bond shall be with at least two sureties, approved by the collector of the district, and for a penal sum not less than the amount of tax on the spirits that can be distilled in his distillery during a period of fifteen days. But in no case shall the bond exceed the sum of $100,000."

8. Taxes on spirits distilled during those years became due not later than eight years thereafter, or upon earlier withdrawal. See the provisions of section 2800 (a) (1) quoted above, and section 2900 (a), which provided:
"*Date of withdrawal.*
"(a) *General rule.* All distilled spirits entered prior to July 26, 1936, for deposit in a distillery, general, or special bonded warehouse, or after such date entered for deposit in an internal revenue bonded warehouse, shall be withdrawn therefrom within eight years from the date of original entry therein, except as provided in subsection (b) of this section."

On July 25, 1957, the United States, Sherwood, Aetna, Union Trust and Peoples First National Bank and Trust Company of Pittsburgh (now Pittsburgh National Bank) entered into an agreement reciting the tax liability of Sherwood on account of whiskey then in its warehouse in the total amount of $263,896.50. The agreement identified the assessment lists and lots of whiskey by number, their original entry date, the quantity of spirits and the amount of the assessment in each instance. The agreement recited the desire of all the parties to sell the whiskey so that the proceeds of the sale might be applied in payment and reduction of the taxes. It was agreed that Sherwood and the banks, which made claim to the whiskey by reason of ownership of certain warehouse receipts, should sell or cause to be sold the lots of whiskey at the best terms possible and turn over the total proceeds of those sales for application to the taxes, interest and penalties owing in connection therewith. It was further agreed that if the total receipts from the sale of each lot were not sufficient to pay the total tax, interest and penalty, Aetna would pay an amount equal to the deficit resulting from such sale but not in excess of $200,000, the penalty of its bond, plus interest.

The spirits listed in the agreement of July 25, 1957, were distilled by Sherwood between December 27, 1945, and April 1, 1947, at its plant. They were owned by Sherwood and remained in storage at the warehouse until eight years from the date of their distillation.[9]

The spirits which were the subject of the assessments were sold by Sherwood for amounts which were not sufficient to pay the taxes, penalties and interest on them. The proceeds of the sales were transmitted to the Internal Revenue Service. The difference between the amounts realized from the sales and the total amounts claimed as due by the Internal Revenue Service for taxes, penalties and interest was $159,535.57. That amount was paid by Aetna, which has since received $5,000.00 reimbursement from Sherwood.

In a proceeding brought by the United States against Sherwood and Aetna, Civil Action 10538 in this Court, Aetna obtained a judgment on a cross-claim against Sherwood for the amount paid by Aetna under its bonds on account of Sherwood's tax liabilities. United States v. Sherwood Distilling Co., 235 F.Supp. 776 (D.C. 1964). The judgment in favor of Aetna is for $154,535.57 and bears interest from October 23, 1959, together with costs. The judgment was affirmed on appeal, sub nom. Aetna Casualty & Surety Co., Appellee, v. Sherwood Distilling Co., Appellant, 344 F.2d 964 (4 Cir., 1965). That judgment fixed the amount of Aetna's claim, but did not otherwise affect the issues in the present case.

In view of the decision reached herein it is not necessary to recite at length the stipulated facts with respect to the claims of the several defendants. It is sufficient to note that the claims of Union Trust, Hoffenberg and Mann arise under a mortgage to Mann for $200,000, covering all of Sherwood's property in Westminster, dated October 10, 1949. The Pittsburgh Bank's claim arises out of a judgment for $649,600, dated March 15, 1951. The RFC judgment, for $36,054.77, was recorded in Carroll County on May 14, 1952, the Seagram judgment, for $19,835.20, on May 23, 1952. Taxes owed by Sherwood to Carroll County ($33,890.34) and the State of Maryland ($2,309.62) for the years 1952 to 1960, inclusive, and for the tax years 1964–1965 and 1965–1966 remain unpaid. Taxes on tangible personal property and distilled spirits bring the total claimed by the County and the State to $51,949.77. Taxes for the same periods owed to Westminster total $23,630.89. All

9. There were 6.6 tax gallons of spirits in the warehouse owned by Sherwood but distilled by another distiller. Those spirits had been deposited in the warehouse on April 12, 1946, and were subject to an assessment of taxes in the amount of $69.30. The amount paid by Aetna included $25.54 assessed on account of 6.6 gallons.

figures in this paragraph are exclusive of interest.

### Discussion

It is essential to keep in mind the distinctions between three different rights of the United States which have been referred to in the briefs and arguments in this case.

1st. The lien created by section 2800(e), Internal Revenue Code, 1939, quoted at the beginning of this opinion. That is a *specific lien,* which covers only the spirits and the distillery (including the equipment and land), but arises as soon as the spirits come into existence, and does not have to be recorded to be effective.[10]

2nd. The lien created by section 3670, Internal Revenue Code, 1939, which is a *general tax lien* on all property of the taxpayer, but does not arise until the assessment is made, see section 3671, and is not valid against mortgagees, pledgees, purchasers and judgment creditors until recorded as provided in section 3672.[11]

3rd. The *priority* established by 31 U.S.C.A. § 191, whenever any person indebted to the United States is insolvent. This priority is accorded to all debts due the United States. The right of a surety to succeed to that priority is covered by 31 U.S.C.A. § 193.

### I

In the present case Aetna is not claiming any priority right under 31 U.S.C.A. § 193. Aetna is relying upon its equitable right of subrogation to the lien created by section 2800(e), Internal Revenue Code, 1939.[12]

That lien, for taxes imposed by section 2800(a), attached to the distillery, as well as to the spirits, as soon as the spirits came into existence as such, section 2800(c), although it was not payable until later, sections 2800(a) (1) and 2900(a), provided the spirits were placed in a bonded warehouse, as these spirits were. In United States v. Rizzo, 297 U.S. 530, 533, 56 S.Ct. 580, 80 L.Ed. 844 (1936), the Court said:

> " * * * A lien attaches to alcohol 'as soon as it is in existence as such' and continues until the tax is paid. Rev.Stat. § 3248 (26 U.S.C.A. § 1150 (c), 1158(b) (1)) and section 3251; Thompson v. United States, 142 U.S. 471, 474, 12 S.Ct. 299, 35 L.Ed. 1084. That lien is valid against all transferees, without assessment, distraint or other administrative proceedings. Alkan v. Bean, 1 Fed.Cas. page 418, No. 202; United States v. Turner, 28 Fed. Cas. page 232, No. 16,548."

Defendants argue that under sections 3671 and 3672, I.R.C., 1939 (section 6322, I.R.C., 1954), the government's lien did not become effective until assessment and recording. That is true of the general lien created by section 3670 et seq., but it is not true of the lien created by section 2800(e), upon which Aetna relies herein.[13] United States v. Rizzo, supra. As we have seen, section 2800(e), I.R.C., 1939, provided:

> " * * * The tax shall be a first lien * * * from the time such spirits are in existence as such until * * * the said tax is paid."

The tax liens upon which Aetna relies in this case arose in 1945, 1946 and 1947, before any of the mortgages or judgments

---

10. The similar provisions of the 1954 Code are in section 5004.

11. The similar provisions in the 1954 Code are in sections 6321, 6322 and 6323.

12. As Aetna states in its brief, it is seeking to enforce a specific lien against a specific piece of real property arising from the use of that property as a distillery, which was authorized and permitted because plaintiff gave bond to the United States to secure compliance by the distiller with all of the requirements imposed by law upon it, including the payment of taxes.

13. Section 3671, I.R.C., 1939, provided: " * * * Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector * * *." Section 6322, 1954 Code, is essentially similar.

upon which defendants rely were made or entered.[14]

■ The principle "first in time is first in right" is the cardinal rule in determining lien priorities. As Chief Justice Marshall stated in Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592 (1827): "The principle is believed to be universal that a prior lien gives a prior claim, which is entitled to prior statisfaction, out of the subject it binds." That rule was reaffirmed in United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L. Ed. 520 (1954), where the Court, after quoting from Rankin v. Scott, stated: "This principle is widely accepted and applied, in the absence of legislation to the contrary." 347 U.S. at 85, 74 S.Ct. at 37.

■ Since the tax liens under section 2800(e), I.R.C., 1939, were the first in time, they were and are entitled to priority over later liens, provided the liens under section 2800(e) were choate before the other liens attached.

■ The test for a choate lien was set out in United States v. City of New Britain, supra, at p. 84, 74 S.Ct. at p. 369: " * * * when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." All three conditions for a choate lien are met by the lien asserted by Aetna herein.

■■ The fact that the tax is not collected until later, provided the spirits are placed in a bonded warehouse, does not make the lien inchoate. The amount of the tax, and therefore the amount of the lien, is established as soon as the spirits come into existence. "A clear reading of the statute indicates that the tax is levied when the spirits are distilled. It is only the collection of them which is postponed for 8 years, providing the spirits are placed in a bonded warehouse." Schenley Distillers, Inc. v. United States, 153 F.Supp. 898, 905 (W. D.Pa., 1957). That case was affirmed by the Third Circuit, Schenley Distillers v. United States, 255 F.2d 334, 336 (3 Cir., 1958), cert. den., 358 U.S. 835, 79 S.Ct. 57, 3 L.Ed.2d 72 (1958), where Judge Goodrich, writing for the Court, stated:

" * * * No one doubts, we suppose, that a valid excise can be placed on the distillation of spirits. There are certain features in both the 1939 and 1954 Internal Revenue Codes which indicate to us that this is exactly what Congress intended to do. The tax is 'levied'[10] or 'imposed'[11] on 'all

"10. I.R.C.1939, § 2800(a) (1), 26 U.S.C.A. § 2800(a) (1).

"11. I.R.C.1954, § 5001(a) (1), 26 U.S.C.A. § 5001(a) (1).

distilled spirits * * * produced in * * * the United States' and attaches 'as soon as this substance is in existence as such.'[12] When the whis-

"12. I.R.C.1939, § 2800(c), 26 U.S. C.A. § 2800(c); I.R.C.1954, § 5001 (b), 26 U.S.C.A. § 5001(b).

ky is not, as required by statute, placed in the warehouse, payment is required immediately.[13] These elements seem

"13. I.R.C.1939, § 2800(b) (2), 26 U.S.C.A. § 2800(b) (2); I.R.C.1954, § 5006(c), 26 U.S.C.A. § 5006(c).

sufficient to classify all exactions made thereunder as indirect production taxes. In this view we are supported by the recent Court of Claims opinion in Erie R. R. v. United States, 1957, 156 F.Supp. 908, [140 Ct.Cl. 398]. See also Thompson v. United

14. The mortgage to Mann under which, he, Hoffenberg and Union Trust claim, was made in 1949. The Pittsburgh Bank judgment was recorded in Carroll County in 1952, the judgment of the RFC in 1952, and the Distiller's (Seagram) judgment in 1952. The taxes claimed by the State, County and City of Westminster are for years beginning in 1952. In order that Sherwood might continue its operations after the mortgage was made and the judgment in favor of the Pittsburgh Bank was entered, Mann and the Bank consented that their liens should be subordinated to the tax lien resulting from alcohol thereafter distilled during certain specified periods. Those consents are not important in this case except to show defendants' knowledge of the tax lien.

States, 1891, 142 U.S. 471, 12 S.Ct. 299, 35 L.Ed. 1084."

## II

■■ A surety on a distiller's bond is entitled to be subrogated to the lien of the government. The equitable right of subrogation was recognized by the Supreme Court as early as Lidderdale v. Robinson, 12 Wheat. 594, 6 L.Ed. 740 (1827), affirming a decision of Chief Justice Marshall on circuit, 15 Fed.Cas. No. 8337 (1824). It has been recognized in many cases since.[15]

In United States v. Boecker, 21 Wall. 652, 22 L.Ed. 472 (1874), the Supreme Court recognized the right of subrogation to which the surety on a distiller's bond is entitled. The bond in that case described the wrong property, and the Court relieved the surety from liability, saying: "In such cases, the United States having a lien, the surety is entitled to the benefit of it. He might be willing to bind himself where the lien was upon one piece or parcel of property, and unwilling where it was upon another." 21 Wall. at 656.

In United States v. Ulrici, 111 U.S. 38, 4 S.Ct. 288, 28 L.Ed. 344 (1884), the Court held that the surety on a distiller's bond also has the equitable right of exoneration. In the case at bar Aetna expressly waived its right to exoneration, but did not waive its right to subrogation. As the stipulated facts show, the liquor was sold by agreement of all parties in interest, and the proceeds paid to the United States. The surety then paid the balance of the taxes due, and acquired by subrogation the lien of the government on the distillery property.

The Restatement, Restitution (1937), supports Aetna's position. Comment d to § 162 states:

"d. *Interests acquired by subrogation.* Where one person is entitled to be subrogated to the position of another, he is entitled in a proceeding in equity to enforce such rights and powers as the other had before they were discharged. The extent of his rights and powers depends upon whether the other had (1) a secured claim; (2) a claim which, although not secured, was entitled to priority over other claims; or (3) an unsecured and unpreferred claim."

Comment e to the same section reads in pertinent part:

"e. *Subrogation to a secured claim.* Where one person is entitled to be subrogated to the position of another, and the other had a secured claim, the person who is entitled to subrogation can by a proceeding in equity reach the security. * * *

"Where property of one person is used in discharging a lien upon the property of another, under such circumstances that he is entitled to subrogation, he can in equity enforce the rights and powers which the lien-holder had prior to the discharge of the lien, even though no one was under a personal liability."

There are a number of cases which hold that when a surety is subrogated to a claim which is not secured by a lien, but is entitled to a priority for some other reason, e. g., the priority of a sovereign state against the assets of an insolvent bank, the surety is not entitled to such priority. See, particularly, In re South Philadelphia State Bank's Insolvency, 295 Pa. 433, 439–440, 145

15. See, e. g., Aetna Life Insurance Co. v. Town of Middleport, 124 U.S. 534, 548, 8 S.Ct. 625, 31 L.Ed. 537 (1888); Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896); Henningsen v. United States F. & G. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); American Surety Co. v. Bethlehem National Bank, 314 U.S. 314, 317, 62

S.Ct. 226, 86 L.Ed. 241 (1941); Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); In re Baltimore Pearl Hominy Co., 5 F.2d 553 (4 Cir., 1925); Fidelity & Casualty Co. v. Massachusetts Mut. Life Ins. Co., 74 F.2d 881 (4 Cir., 1935); and cases collected in 50 Am.Jur., Subrogation, §§ 49, 110 (1944).

A. 520, 521, 83 A.L.R. 1123 (1929), where the Court said:

" * * * Since the right of priority of the sovereign state exists pro bono populo, it follows that, where a situation arises in which the state, having been paid in full, is not immediately concerned, and where the transfer of its right of priority would result in prejudice to one class of its citizens for the benefit of another, it cannot be held that the good of all the people would thus be served.

" * * *

* * * * * *

"When the bank failed, the commonwealth had all the rights of an ordinary depositor; those rights passed by subrogation to appellant. The commonwealth had also the sovereign's right to priority of payment over other depositors, but, owing to the peculiar nature of that right, it would not pass by subrogation to appellant."

The *South Philadelphia* case probably represents the minority view; see comment f to § 162 of the Restatement, Restitution. Be that as it may, it cannot avail defendants in this case, for two reasons:

First, because the *South Philadelphia* case has not been adopted by the federal courts, although it was urged on the Supreme Court by Justice Douglas, dissenting in American Surety Company v. Bethlehem National Bank, 314 U.S. 314, at 324, 62 S.Ct. 226, at 231, 86 L.Ed. 241 (1941). The majority of the Court stated:

" * * * Succeeding to the creditor's right, the surety also succeeds to the creditor's means for enforcing it. The surety is a special kind of secured creditor. For its claim against the principal is secured by its right of subrogation to the remedies of the creditor which it has been compelled to pay. Of course, this right can be availed of only by a surety

alert in discharging its duty, Jenkins v. National Surety Co., 277 U.S. 258, 267, 48 S.Ct. 445, 446, 72 L.Ed. 874, and one not guilty of inequitable conduct, United States v. Ryder, 110 U.S. 729, 737, 4 S.Ct. 196, 199, 28 L.Ed. 308. In other respects, a right of subrogation is as much in the nature of a security as is a mortgage." 314 U.S. at 317, 62 S.Ct. at 228.

The facts of that case were different from the facts of this case; but the quoted language is applicable.[16]

Second, because the *South Philadelphia Bank* case dealt with a *priority* and not with a *lien*. In the instant case Aetna is not relying on the priority given to the United States by 31 U.S.C.A. § 191 and to a surety by 31 U.S.C.A. § 193. Aetna is relying on its right of subrogation to a claim secured by a lien, and under the principles recognized by the Restatement, quoted above, as well as by the federal cases, Aetna can enforce in equity the rights and powers of the lien-holder.

There are cases which hold that where a surety discharges the liability of another to a state, under such circumstances that he is entitled to be subrogated to the claim of the state, he is not entitled to enforce that claim by summary methods which the state as sovereign might have employed, e. g., by a summary seizure of the debtor's property. See comment f to § 162, Restatement, Restitution. In this case, Aetna is not attempting to enforce the lien by any strong-arm method of collection nor to avoid any rule of law applicable to everyone except the sovereign. Cf. Fidelity & Casualty Co. v. Massachusetts Mutual Life Ins. Co., supra, and In re J. Menist, 289 F. 229 (2 Cir., 1923). Aetna has come into court asking that the lien to which it was subrogated be enforced in accordance with the general rule "that a prior lien gives a prior claim", stated in United States v. City of New Britain, quoted above. All in-

---

16. If the *South Philadelphia Bank* case, had dealt with the priority of the United States, established by 31 U.S.C.A. § 191, the surety would have been entitled to such priority. 31 U.S.C.A. § 193.

terested parties have been joined and heard. This procedure is in accord with comment e to § 162 of the Restatement, Restitution, quoted above.

### III

■ The specific lien which Aetna is entitled to enforce in this proceeding attached to the land, buildings and fixtures described in the distiller's notice, Form 27–A, required by Title 26, Chapter I, of the 1940 Regulations. See note 6, above. It did not attach to the land and buildings owned by Sherwood not included in Form 27–A.

With respect to the land and buildings not included in Form 27–A, Aetna claims only by subrogation to the lien of the government under sections 3671–3673, I.R.C., 1939, sections 6321–6323, I.R.C., 1954. That lien is junior to the lien of the mortgage and of the judgments of the Pittsburgh Bank, the RFC and Distiller's (Seagram).

### IV

■ The United States, through the Administrator of GSA, successor to the claims of the RFC, claims priority for the RFC judgment over all other creditors of Sherwood, including Aetna's section 2800(e) lien, on the basis of R.S. 3466, 31 U.S.C.A. § 191, which provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Where R.S. 3466 applies, the cases are not clear as to whether the priority of the government thereunder takes precedence over valid, specific liens, when the property has not been taken out of the possession of the debtor. Cf. United States v. Atlantic Municipal Corp., 212 F.2d 709, 711 [17] (5 Cir., 1954), with dicta in United States v. Vermont, 377 U.S. 351, 357, but see f. n. 8, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). See also United States v. Bond, 279 F.2d 837 (4 Cir., 1960), cert. den., 364 U.S. 895, 81 S.Ct. 220, 5 L.Ed.2d 189 (1960); United States v. Lebanon Woolen Mills Corp., 241 F.Supp. 393 (D.N.H., 1964), and cases cited therein.

The government argues that R.S. 3466 applies because, it contends, Sherwood committed an act of bankruptcy while insolvent by permitting certain creditors, Pittsburgh National Bank and Distillers' Distributing Corp., to obtain judgment liens upon Sherwood's property without having discharged such liens within thirty days from the date thereof. See 11 U.S.C.A. § 21(a) (3). The difficulty with that contention, however, is that the government did not prove that Sherwood was or is insolvent, and the other parties to this case have refused to admit that fact. The bankruptcy proceeding filed against Sherwood was dismissed in 1957. The government has not proved any of the conditions precedent to the operation of R.S. 3466, and the claim of the government thereunder must fail.

■ Even if R.S. 3466 did apply, this Court believes that a judgment in favor of the RFC, to which the United States

---

17. In that case the Fifth Circuit held that R.S. 3466, 31 U.S.C.A. § 191, "has no application to a valid specific and perfected, a fully choate lien." The Court said: "This statute applies only as against unsecured debts, that is, debts not secured by a specific and perfected lien. It has never been, we think it will never be, applied as it is sought to be applied here, to accord payment to a debt due the United States in preference to a claim secured by a lien which is prior in time and superior in law to the lien of the United States securing the debt for which preferential payment is sought." 212 F.2d at 711.

has succeeded in title and interest, should not be accorded priority over a valid, choate lien which attached to specific property before the judgment in favor of the RFC was entered. It would be monstrous to hold that such a judgment debt would take priority over a valid, prior mortgage, and this Court does not believe that the Supreme Court would so hold, in spite of dicta in United States v. State of Vermont, supra, where the question of R.S. 3466 was not involved, since the government was claiming under the general tax lien created by 26 U.S.C.A. §§ 6321 and 6322, I.R.C., 1954. The decision of the Fifth Circuit in the *Atlantic Municipal* case has been followed in other cases.[18] Those cases support the conclusion that the RFC judgment should not take priority over the earlier, choate lien, to which Aetna was subrogated.

The government further contends that the case of United States v. National Surety Company, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143 (1920), precludes Aetna from asserting its rights acquired through subrogation to the detriment of the United States. The government's reliance on that decision is misplaced. The opinion in United States v. National Surety Company recognized the surety's equity of subrogation, but postponed its operation in that case because the amount of the bond was insufficient to pay the total amount of the debt, and therefore the government had not received full payment of the very obligation which the surety's bond secured. To have allowed subrogation there would have made the surety a competitor with the government, which was still a creditor seeking recovery from the assets of the debtor for the balance of its obligation for which the bond had been issued. The effect of the decision in that case was to postpone subrogation until the government was paid in full. In the case at bar the claim made by the government is not related to the tax claim, which was paid in full by Aetna, resulting in its subrogation to the government's lien.

The government also cites United States v. Munsey Trust Company, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), in which the government was permitted to set off funds in its hands against the claim of the surety. The later case of Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), approved the decision in *Munsey Trust,* but limited it to its facts, refused to adopt all of the language used in *Munsey Trust,* and reaffirmed the *Prairie State Bank* and *Henningsen* cases.

For each of the reasons discussed above, this Court concludes that the priority asserted by the government under 31 U.S.C.A. § 191 does not take precedence over the lien on the distillery property covered by Form 27–A, which Aetna acquired by subrogation when it paid the government's claim for taxes imposed by section 2800, I.R.C., 1939.

## V

For reasons stated above, Aetna's lien also takes priority over any liens which the State, County and City may have.

The contentions of the other defendants with respect to the validity and enforceability of the State, County and City tax claims need not be decided in this proceeding, unless the property covered by Aetna's lien sells for more than enough to satisfy the lien. The Court has not been asked in this proceeding to sell any of Sherwood's property not covered by Aetna's lien, and the validity and enforceability of the State, County and City claims against other property of Sherwood should be decided by a State Court in an appropriate proceeding.

Counsel should agree on an appropriate order giving effect to this opinion.

18. Southern Railway Co. v. United States, 306 F.2d 119 (5 Cir., 1962); United States v. Morrison, 247 F.2d 285 (5 Cir., 1957); Exchange Bank & Trust Co. v. Tubbs Mfg. Co., 246 F.2d 141 (5 Cir., 1957); United States v. Lebanon Woolen Mills Corp., 241 F.Supp. 393 (D.N.H., 1964).